W. M. TAYLOR v. SAN ANTONIO & ARANSAS PASS RAILWAY
COMPANY.

Decided October 26, 1904.

**1.—Railway—Overflow.**

Pleadings, instructions and evidence in an action against a railway for injury to plaintiff's land and crops by causing overflow through interference with the natural drainage, set forth in extenso in the opinion, considered, and held that the issues were properly submitted and the refusal of charges asked by plaintiff was proper.

**2.—Same—Charge.**

An instruction denying plaintiff's right to recover for certain damages not claimed in his petition was proper.

**3.—Same.**

An instruction submitting in the terms of the statute that it was not the duty of the railway to construct a channel for the drainage of the plaintiff's land, but only to provide culverts and sluiceways for its natural drainage, is correct.

**4.—Same.**

Instruction denying recovery, if the defendant railway had constructed its road in a proper, careful and scientific manner, was correctly given.

**5.—Same.**

Charge given on request held not erroneous as repeating instructions embodied in main charge.

**6.—Evidence—Opinion—Flow of Water.**

Witnesses familiar with the plaintiff's land and the usual rainfalls in that section, may give their opinions on matters of drainage and of proper construction of road in reference thereto, though not otherwise qualified as experts.

**7.—Conflict—Testimony.**

A verdict and judgment sustained by the trial court will not ordinarily be reversed on appeal because of the conflict in testimony.

**8.—Assignment of Error.**

Assignment of error in refusing a new trial on account of newly discovered testimony should point out in itself or by proposition and statement thereunder the specific error complained of.

**9.—Newly Discovered Evidence.**

Newly discovered evidence which is merely cumulative does not require the granting of a new trial.

Appeal from the District Court of Falls. Tried below before Hon. S. R Scott.

*Rice & Bartlett, R Lyles,* and *Henderson, Morrison & Freeman,* for appellant.

*A. W. Houston* and *Baker & Thomas,* for appellee.

EIDSON, ASSOCIATE JUSTICE.—This was an action by appellant against appellee for damages to the land and crop of appellant from overflow alleged to have been caused by the improper and negligent construction of appellee's railway; and in which judgment was rendered for defendant, appellee.

Appellant's cause of action is alleged substantially as follows: On the dates complained of he was the owner of four tracts of land forming

one body and aggregating about 600 acres, lying south of the town of Rosebud, a station on defendant's railway in Falls County, and adjacent to the town site of said town, and between the town and Pond Creek, a watercourse which drained plaintiff's land and a large area to the northward thereof, including said town of Rosebud, which is about two miles from said creek. Plaintiff's land was situated in the valley of said creek, and the general slope of the surface of the country over and including the town of Rosebud and plaintiff's land was southward and westward in the direction of said creek. The natural watershed for surface rainwater flowing from Rosebud and vicinity was southwesterly to said creek, over and through natural depressions, basins and channels, which existed long prior to the construction of defendant's railway. Said surface water being thus carried off into Salt Branch, a tributary of Pond Creek, and lying westward of said railroad, and thence to said creek, without damage or injury to plaintiff's land.

The surface of his land was drained in part of the water falling thereon by means of a depression or draw, beginning about one-fourth of a mile from plaintiff's north line, and about the same distance west of defendant's railroad, and extending through part of plaintiff's land in a southeasterly direction, and discharging into Pond Creek; that said draw existed as a natural feature of the surface long prior to the construction of defendant's railway, and now exists and was about 300 yards wide and about one-half mile long, and water falling upon a part of plaintiff's land was accustomed to flow out through said draw and spread over the surface thereof in a wide sheet in such a way as to do no damage to the land and the crops growing thereon; and said depression was sufficient to carry off the water properly draining therethrough without damage.

Plaintiff's tract of land was in a high state of cultivation, crops of corn, cotton and other products were growing thereon, and plaintiff was able to grow, prior to the injuries complained of, large and valuable crops on said land, and particularly in said depression, without damage or injury from water flowing thereover.

Defendant's line of railway extended through plaintiff's land a distance of about one mile and a half in a course north and south, crossing Pond Creek at plaintiff's south line, and divided plaintiff's land about equally and crossed said depression near its beginning.

Defendant negligently constructed and maintained its railway at and from its station in the town of Rosebud into and through plaintiff's land, so that the surface water, which had aforetime flowed from said town according to the natural lay of the land across and to the westward of said railway into Salt Branch and not upon plaintiff's land, was diverted from its natural course by means of defendant's railway embankment and ditches, culverts and sluiceways described in plaintiff's petition, and caused to flow down and along defendant's railway into plaintiff's land, and together with other water which fell upon plaintiff's land, and which had aforetime, according to the natural lay

of the land, drained through said depression, was collected and impounded therein, immediately above defendant's railway and on plaintiff's land, where the same inundated and destroyed the crops on about ten acres of plaintiff's land and washed and injured the soil thereof. Said water was thence discharged in great force and volume across said railway track through certain culverts and sluiceways described in plaintiff's petition onto plaintiff's land lying east of and below said railroad, whereby said land and the crops growing thereon were injured and destroyed; that the water flowing through said depression was not permitted to spread out and flow as it had been accustomed to do before the construction of said railway. And but for the negligent construction and maintenance of defendant's roadbed the surface water flowing from Rosebud and vicinity would have flowed according to the natural drainage and surface of the land into Salt Branch and Pond Creek and not upon plaintiff's land, and would not have been collected and impounded in said depression, and but for the negligent construction of defendant's embankment across said depression and its failure to provide sufficient sluiceways for the proper passage of the water which flowed through said depression, such water as naturally drained therethrough would have passed off as it did prior to the construction of said railway and without injury to plaintiff's land or crops.

Appellant submits the following assignments of error together: "First assignment of error: The general charge of the court incorrectly and incompletely stated the plaintiff's cause of action as alleged in his petition, and as shown by the evidence, in this: Plaintiff alleged for his cause of action 'that defendant in constructing and maintaining its line of railway through plaintiff's tract of land and northward therefrom to the town of Rosebud, was guilty of negligence in failing to provide sufficient culverts and sluiceways for the passage and flow of surface water, according to the natural drainage of the land, and that at the times complained of in plaintiff's petition the rainwater falling in Rosebud and vicinity to the northward of plaintiff's land, and which according to the natural drainage and lay of the land would have flowed off across and to the westward of defendant's railway into Salt Branch and not over plaintiff's land, was collected in great quantities near defendant's station in Rosebud and was thence diverted from its natural course to Salt Branch, and by means of certain ditches constructed along defendant's railway and certain culverts was caused to flow down into plaintiff's land, and together with other surface water, which according to the natural drainage of the land flowed over plaintiff's land, was collected on the west side of defendant's railroad track near the head of a natural depression in plaintiff's land, by means of a dam or embankment built as a roadbed by defendant across said depression; and said water was not permitted to spread out and flow as it would have done but for said obstruction, without injury to plaintiff's land or crops, but was caused to stand upon ten acres upon the west side of said railroad, whereby plaintiff's crop and land were injured, and

was from thence discharged through a culvert and certain sluiceways with great force and in great quantities upon plaintiff's land, eastward of said railway, washing his land and crop and injuring the same. The substance of plaintiff's cause of action being that defendant collected and caused a large flow of water, which would not have passed into his land according to the natural drainage, to flow into the same, and that the damage complained of was caused by the volume of this water, and by the manner in which the same was concentrated with other surface water in plaintiff's field.' But in stating plaintiff's cause of action in the charge to the jury the court failed to make any mention whatever of so much of that part of plaintiff's complaint as alleged the collection and concentration of the water falling in Rosebud and vicinity and its diversion from its natural course, whereby it was carried into plaintiff's farm as aforesaid; and said charge only stated plaintiff's cause of action to be the alleged negligence of defendant in the construction of its roadbed across said depression, and in effect stated to the jury that said water from Rosebud and vicinity would have flowed through his land in its natural course, and thereby deprived plaintiff of any hearing before the jury on account of said water so flowing from Rosebud as aforesaid, although most of the testimony in the case was directed to proof as to the flow of said water, and the same was particularly alleged and complained of in plaintiff's petition; and the jury were in effect instructed that plaintiff was not entitled to recover any damages, except such as might have resulted to him on account of the manner in which defendant's roadbed was constructed across said draw or depression. And plaintiff in this connection shows' that he requested special charges numbers 5, 7 and 9 here referred to, and which stated with more particularity and completeness plaintiff's cause of action to the jury, but which charges the court refused to give.

"Wherefore, plaintiff says that he has been deprived of a proper consideration of his cause of action by reason of the manner in which the same was submitted in the court's general charge, and by the court's refusal to give the special charges requested.

"2. The court erred in refusing to give plaintiff's special charge number 1, to the effect that the defendant while 'having the right to change the natural direction of the course of the flow of the surface water, was required to so conduct and discharge the same as not to cause any greater injury to the land and crops growing on plaintiff's land than would have been the case if said flow had not been changed;' and further to the effect that 'if a large quantity of surface water fell in Rosebud and vicinity during the years 1902 and 1903, and was collected and accumulated by defendant's railway and near its station in said town, and the defendant failed to provide sufficient culverts and sluiceways for its passage from said point according to the natural course of the flow, but so changed the natural flow by means of its embankment, barrow-pits, ditches, culverts and sluiceways described in

plaintiff's petition, as to cause a large quantity of the same to flow into plaintiff's land, and that the same was not the natural course of the flow of said water, according to the lay of the land; and so conducted the same to the depression on the west side of defendant's railway in plaintiff's field, and overflowed a portion of plaintiff's land and crops growing thereon, and thereby damaged and injured said crops, and that by reason of certain culverts, sluices or cattle-guards the defendant conveyed said water across said railroad and discharged the same with great force and violence over and across plaintiff's land and the crop of cotton growing thereon, east of said railway, and that the same was not the natural course of the flow of said water; or if the jury believed that the same was the natural course of the flow of the water according to the natural drainage of the country, but that said culverts and sluices were insufficient to properly discharge said water according to its usual and natural flow, and plaintiff's said land and the crops thereon were thereby damaged and injured as alleged, then they would find for the plaintiff the damage occasioned.'

"3. The court erred in refusing to give plaintiff's special charge number 5, to the effect that 'if the water that fell in Rosebud and vicinity south of Main Street at the time alleged in plaintiff's petition, according to the natural lay of the land would have drained over a portion of plaintiff's land east of the railroad, and in such manner as to not injure the same or the crops thereon, but that defendant, by reason of the negligent construction of its ditches, cow-gaps and embankments, collected said water and conducted the same over into plaintiff's land west of said railroad and into the depression described in plaintiff's pleadings and there accumulated and impounded the same, whereby plaintiff's land or crops were damaged or injured, and from said point the same was discharged with great force and violence over plaintiff's land lying east of said railway, to the injury of plaintiff's crop or land, and but for the manner in which the water was so accumulated and discharged the same would have passed off without injury, then you are instructed to find for the plaintiff such damage as he may have sustained.'

"4. The court erred in refusing to give plaintiff's special charge number 4, to the effect that 'if the jury believed that prior to the construction of defendant's railway the water which fell upon the town of Rosebud and its vicinity north of the main street, commonly called Avenue C, flowed according to the natural lay of the land so as to drain into Salt Branch, and that the defendant by the construction of its road as alleged in plaintiff's petition, changed and diverted the flow of said water so as to thereafter flow down its roadbed ditches and barrow-pits into and upon plaintiff's land, and that but for such construction the same would not have flowed upon plaintiff's land, and that by reason thereof he suffered injury and damage to his land and crops, or either, then to find for plaintiff.'

"5. The court erred in refusing to give plaintiff's special charge number 2, to the effect that 'if the jury believed that by reason of the improvement and grading of the public roads and streets of the town of Rosebud that the flow of the water falling upon the territory of said town and its vicinity was thereby increased or caused to flow upon defendant's roadway and roadbed, and that defendant, as charged in plaintiff's petition, failed to increase the capacity of its sluices and waterways as became necessary for the escape of said water so accumulated, but so constructed them as to flow said water upon plaintiff's land, whereby plaintiff was injured and the said water was caused to flow with great force and violence upon plaintiff's premises so as to injure his land and crop, then if you so believe you will find for plaintiff.'

"6. The court erred in refusing to give plaintiff's special charge number 6, to the effect that if the jury found that 'by reason of the grading or improvement of the streets of Rosebud larger quantities of water were caused to flow in seasons of rainfall from said town and vicinity to defendant's railroad at and near its station at the time and times alleged in plaintiff's petition or any of them, then you are instructed that the defendant was not thereby relieved of the duty it owed to plaintiff to conduct and convey said water according to the natural lay of the land, nor was the defendant relieved of its duty to provide all such culverts and sluiceways as were reasonably necessary for the passage of said water, according to its natural flow, so that if you believe that the natural flow or course of such water was not over plaintiff's land, but was over the surface south and southwest of said railroad through depressions, lagoons and other natural drainage, and that the defendant, by the manner in which its railroad was constructed and maintained, changed the course of this water and caused the same to flow on plaintiff's land and thereby damaged his land and crops, or either, as alleged in his petition, then you will find for the plaintiff such damages.'

"7. The court erred in refusing to give plaintiff's special charge number 7, to the effect that 'if the natural flow of said water in time of rainfall in Rosebud and vicinity, according to the natural lay of the land, would have been into plaintiff's said land and into said depression thereon, and out through said depression described in plaintiff's pleading, and if you further find that if not interfered with said water would have flowed without damage to plaintiff's land or crop, and that by reason of the defective construction of defendant's railroad the same was so accumulated on plaintiff's land west of the railroad and held thereon, whereby plaintiff's land and crops were damaged and the water was thereafter discharged with great force and violence to the injury of plaintiff's land and crop east of said railroad, then you will find for plaintiff such damages as he may have sustained thereby.'

"8. The court erred in refusing to give plaintiff's special charge

number 3, to the effect that 'if the jury believed that the natural flow of the rainfall at Rosebud and vicinity was down defendant's railroad and into plaintiff's land, and into the depression described in plaintiff's petition, thence across said railroad and over and upon plaintiff's land east of the same, and the crop of cotton growing thereon, and if they further find that by reason of the way defendant's railroad was constructed and maintained as charged in plaintiff's petition, that said water was collected in larger quantities than would naturally flow in that direction, and so accumulated and impounded in said depression and thereby flooded and injured the crop of cotton growing thereon, and that but for said manner of construction and maintenance of said railroad said water would not have accumulated and flooded and injured said crop, and that by the manner in which said railroad was constructed said water was discharged over and across plaintiff's land east of said railway and the crop of cotton growing thereon, with great force and violence, and that said land and the crop thereon, or either, were injured thereby; and · but for the manner in which said railway was constructed and maintained said water would have· flowed down and through plaintiff's land and crop without injury or damage thereto, then if you so believe you will find for the plaintiff such damages as were occasioned thereby.' "

The court in his general charge instructed the jury as follows:

"1. This is a suit instituted by the plaintiff against the defendant railroad company, in which the plaintiff seeks to recover of the defendant company certain damages which he alleges he has sustained by reason of the negligent acts of the defendant company, its agents, servants and employes, in the construction and maintenance of its roadbed along and across his land, which is described in his petition.

"2. He specially alleges that he was damaged by the loss of his crop upon ten acres of land situated west of the railroad track, by reason of water standing upon said ten acres of ground and ruining said crop for the year 1902; also the crop upon the same piece of ground for the year 1903, the value of said crop so damaged for each of said years being the sum of $200. Plaintiff alleges that he suffered said damages by reason of the fact that the defendant in the construction of its roadbed across the mouth of the draw where said ten acres of land is located prevented the water from flowing over the ground in its natural way, and confined it in such way that it remained and stood for a sufficient length of time on said crop as to cause it to be destroyed, and that but for the construction of said road in the manner in which it was constructed such water would not have been confined upon said territory, but would have drained off southward and inflicted no injury upon said crops.

"3. Plaintiff further alleges that on the east side of said railroad track he is the owner of a piece of land, and that the crops growing upon said land adjacent to said railroad for the years 1902 and 1903

were destroyed by the water occasioned by the negligence of the defendant railroad company, its agents, servants and employes, and that the value of said crop so destroyed upon said land for the year 1902 was $1500, and that the crop growing upon the same piece of ground for the year 1903 plaintiff alleged was damaged and destroyed to the extent of $800.

"4. Plaintiff alleges that the natural lay of the land was such that said water in escaping from plaintiff's land would spread out over a considerable space of territory, and would have inflicted no injury upon said crop but for the act of defendant company in constructing its said roadbed in the manner in which they did.

"5. Plaintiff further says that said roadbed was constructed in such a manner as to hold said water in a lake upon the west side of its roadbed, and that it was only allowed to pass through one culvert and sluiceways, which are especially mentioned in plaintiff's petition. That they were so small in size and so few in number as to cause said water to go through with great' force, so much so as to cause the destruction of plaintiff's crop growing upon the land across which said water ran.

"6. Plaintiff, charges that the defendant was negligent in not so constructing its road at a point as to permit said water to spread over this land, as the natural lay of the land required that it should.

"7. Plaintiff also alleges that said tract of land last above referred to has been damaged, to wit, 80 acres of it in the sum of $40 per acre, by reason of said water flowing violently across it from said water sluices and culverts, and that the remaining 220 acres of plaintiff's land was injured and damaged in its actual market value by reason of the washing out and flooding of said 80 acres, to the extent of $10 per acre.

"8. Defendant by its answer says that its roadbed was and is constructed in a proper, careful and scientific manner through and across plaintiff's land, and if any damage was sustained to the crops and the land, that it was on account of the unprecedented and heavy rainfalls on and around said lands, and not negligence or carelessness on the part of said defendant, and that said injuries, if any, complained of, would have resulted even had not said railroad been built. Defendant further answers and says that its roadbed has been constructed so as to benefit rather than to injure it.

"9. Now you are charged that the defendant railroad company has the lawful right to construct its road across the plaintiff's land in question and at the place in question, but in so doing it must leave said land in its former state or in such state as to not impair its usefulness, and must maintain it in that condition. It must construct such necessary culverts and sluices as the natural lay of the land requires for the necessary drainage thereof.

"10. If, therefore, you believe from the evidence before you that the defendant railroad company so constructed its road across plain-

tiff's land and across the draw referred to as that it materially interfered with the passage of the water through the channel and valley of said draw, and that by reason of such interference, if any, the water was caused to stand upon plaintiff's crop upon the west side of defendant's railroad track to such an extent that such crops were injured, and you further find from the evidence that said injury, if any, would not have occurred but for the construction of defendant's said road across said draw in the manner in which the same was constructed, then if you so find the plaintiff would be entitled to recover the reasonable market value of the crops so destroyed on the west side of defendant's railroad.

"11. Again, if you believe from the evidence before you that the defendant railroad company so constructed its roadbed across and along the draw on plaintiff's land and through the land lying immediately north thereof in and around its railroad depot, situated at Rosebud, in such manner that it interfered with the natural flow of the water passing thereover and caused such water to be confined to a narrower space than it would have naturally done and caused it to flow over the land of plaintiff on the east side of the railroad in a violent manner, so as to injure either the crops or the land over which it passed to such an extent that said land and crops, or either, were injured, and you further find that such injury, if any, would not have occurred but for the construction of its said road across said draw and through said territory above referred to in the manner in which the same was constructed, then, if you so find, the plaintiff would be entitled to recover for whatever damages he sustained by reason of said acts, either to his land or to his crops of cotton growing on said land for the years 1902 and 1903, situated upon the east side of defendant's railroad and immediately adjacent thereto."

At the request of appellant the court gave the jury the following special charge: "You are instructed that if you find from the evidence that prior to the time of the injuries as alleged by the plaintiff to his land and crops, that the railway of the defendant through his said tract of land was so constructed and maintained that the flow of the water from said town of Rosebud and vicinity into the plaintiff's said land was so conducted by means of a ditch or ditches along the defendant's railway, so that all or a sufficient portion of said water flowed into Pond Creek, so that the plaintiff was not damaged by reason of the water collecting on his land at the depression west of the railroad, and was not damaged by reason of the discharge of the water across said railroad upon the land east of the same; but that afterwards, at the time alleged in plaintiff's petition, the defendant permitted such ditch or waterway to become stopped up in such manner as to cause the water flowing down said draw to accumulate in the depression west of the railroad and to flow over the defendant's land east of the railroad and not permitted to flow into said Pond Creek, by reason of obstructions

in said ditch or ditches, placed there by the defendant, or allowed to accumulate there, and that the crop on a portion of plaintiff's land was damaged and injured by such water, and that such water was discharged across said railway onto and over plaintiff's land, lying east of the same, and the crop growing thereon, with such force and violence as to injure said land and crops or either; and that but for that obstruction of said ditch or ditches, as aforesaid, said land, crop or either would not have been so injured or damaged, then you will find for the plaintiff for such damages as may have ben occasioned by said water as aforesaid, and assess the amount in your verdict."

The court refused the following special charges asked by the appellant:

"1. If, therefore, you find from the evidence that the defendant so constructed and maintained its said railway between the points described in plaintiff's petition, that on all or any of the dates alleged therein during the years 1902 and 1903 large quantities of flowing surface water caused by rainfall at Rosebud and vicinity was collected and accumulated east of the railway and near its station in said town, and that defendant failed to provide sufficient culverts and sluiceways for its passage from said point, according to the natural course of the flow, and so changed the natural flow of said water by means of its embankment and certain barrow-pits or ditches, culverts and sluiceways described in plaintiff's petition, as to cause a large quantity of the same to flow into plaintiff's said land, and that same was not the natural course of the flow of said water, according to the natural lay of the land, and so conducted the same to a depression on the west side of said railway in plaintiff's field, and overflowed a portion of plaintiff's land and the crop of cotton growing thereon at said point, and thereby damaged and injured said crop, and that by reason of a culvert and certain sluiceways or cattle-guards defendant conveyed said water across the railroad and discharged the same with force and violence over and across the plaintiff's land and the crop of cotton growing thereon east of said railroad, and that the same was not the natural course or flow of said water; or if you should believe that same was the natural course of said water according to the natural drainage of the country, but that said culverts and sluiceways were insufficient to properly discharge said water, according to its usual and natural flow, and that plaintiff's said land and crop or either were thereby damaged and injured, as alleged in plaintiff's petition, then you will find for the plaintiff for damages so occasioned, and assess the amount thereof in your verdict.

"2. You are charged that if you believe from the evidence that by the improvement and grading of the public road and the streets of the town of Rosebud the flow of the water falling upon the territory of said town and its vicinity was thereby increased and caused to flow upon the defendant's right of way and roadbed, and that the defendant, as charged in plaintiff's petition, either failed to increase the capacity of

its sluices or waterways in such manner as became reasonably neces-. sary for the escape of said water so accumulated thereon, or so constructed them as to throw said water upon plaintiff's land, and that by reason thereof said water was thereby caused to flow with such force and violence upon plaintiff's premises so as to injure his land or crops or either, then if you so believe you will find for the plaintiff such damages as you may believe he sustained."

"4. If you believe from the evidence that prior to the construction of the defendant's roadway the water which fell upon that part of the town of Rosebud and its vicinity north of the main street of said town, commonly called Avenue C, flowed according to the natural lay of the land so as to drain into Salt Branch, and that the defendant, by the construction of its road as alleged in plaintiff's petition, changed and diverted the flow of said water so as to thereafter flow down defendant's roadbed, ditches and barrow-pits into the plaintiff's land, and that but for such construction the same would not have so flowed upon plaintiff's land, and that by reason thereof he suffered injury and damage to his land or crops, or either, then you will find for the plaintiff such damages as you may believe he suffered thereby.

"5. If you find that all or a portion of the water that fell in Rosebud and vicinity south of the main street in said town on the dates alleged by plaintiff, or any of them, according to the natural lay of the land, would have drained to the east of plaintiff's land or would have drained over a portion of plaintiff's land lying east of said railroad, and in such manner as not to have injured the same or the crops growing thereon, but that the defendant, by reason of the manner of the construction of its ditches, cow-gaps and embankment collected said water and conducted the same onto plaintiff's land west of said railroad and into said depression described in plaintiff's petition, and there accumulated and impounded the same, and thereby flooded a portion of plaintiff's land at said point and injured and damaged the crop of cotton growing thereon, and from said point discharged said water across its said roadbed with such force and violence over the plaintiff's lands lying east of said railroad, and the crop of cotton growing thereon, as to injure said land and crop, or either of them, and that but for the manner in which said water was so accumulated and discharged by the said railroad company the same would have passed' off without injury to plaintiff's land and crop, or either, then you will find for the plaintiff for such damages as may have been occasioned by said water, and assess the amount in your verdict.

"6. If you find that by reason of the grading and improvement of the streets of the town of Rosebud larger quantities of water were caused to flow in seasons of rainfall in said town and vicinity to the defendant's railroad at and near its station at the times alleged by plaintiff, or any of them, then you are instructed that the defendant was not thereby relieved of the duty to plaintiff to so conduct and con-

vey said water as to permit the same to flow according to the natural lay of the land, nor was the defendant relieved of its duty to provide all such culverts and sluiceways as were reasonably necessary for the passage of such water according to its natural flow; so that if you believe that the natural course of flow of such water was not over plaintiff's land, but was over the surface west and southwest of said railway through depressions, lagoons or other natural drains, to Salt Branch, and that the defendant, by the manner in which its railway was constructed and maintained, changed the course of such water and caused the same to flow into plaintiff's land and thereby damaged his land or crops, or either of them, as alleged in his petition, you will find for the plaintiff for such damages and so state in your verdict."

Under the above quoted assignments of error, appellant insists that the court below committed material error in not giving an affirmative instruction to the jury upon the issue as to the alleged collection and concentration of the water falling in Rosebud and vicinity, and its diversion from its natural course, whereby it was carried into appellant's farm and caused the damage alleged. The testimony claimed by appellant as demanding such instruction is as follows:

W. M. Taylor, the plaintiff, testified: "I owned the land referred to in the petition at the time of the injuries complained of; it was all in a good state of cultivation. It is situated in Pond Creek valley, between Rosebud and the creek. The railroad splits it about in half; there is a draw or depression extending through the track. There is a channel there now from five to thirty feet wide. It begins right below where the draw runs under the railroad. Prior to the injuries I complain of there was no channel there. There was just a wide draw and not a particle of a channel. The draw commenced on the west side of the railroad which was constructed across it. The land in the basin was in cultivation at the time.

"The railroad is constructed on an embankment all the way from the creek to the station at Rosebud. There were some openings under the railroad for the passage of water from one side of the railroad to the other in this distance. There was a sewer pipe at the depression in the land that I have spoken of. It was eighteen or twenty inches in diameter. There were also two cow gaps about eight feet wide. At these gaps the embankment was not excavated down to the bottom of the side ditches, the bottom of the gaps being higher than the bottom of the ditches.

"A public road crossed the railroad near this depression. It was on an embankment thrown up on the west side of the railroad, and on the other side there was a bridge over the ditch. The embankment stopped up the ditch on the west side, otherwise the ditch would have run down the railroad to the creek; from this depression towards Rosebud there were two openings under the road, cow gaps. One of them was about a fourth of the distance and the other was where the road goes into my

field near the depot. Right at the depot there were two culverts, six-teen or eighteen inches in diameter. They ran straight with the street across the railroad just north of the depot. These culverts did not carry away the water, but discharged it into the ditch on the west side of the railroad, and from there it went into my field.

"I was acquainted with the country prior to the time the town and railroad were built there. I first knew it forty-five years ago; it was all open then. I moved there two years after the railroad was built. Prior to the building of the railroad the water used to go right west straight on down to Salt Branch, which is a considerable watercourse that goes around the town on the north side and around to the west, and the drainage of the country was down Salt Branch. The water went across the railroad, not down it. It was a sort of flat country and then there were two basins, one above where the depot is now and one below it. So that it had one point to discharge below where the depot is now and one above, and in times of high water it nearly covered the whole thing in water, but the general surface is almost level with a little slope towards Salt Branch; the water goes that way all right. Since the railroad has been built the water that I have spoken of as coming down to the railroad from the town and its vicinity has flowed onto my land; it did not go down across there before the railroad was built.

"When there comes a rainfall of any quantity up about town it goes straight down to the railroad; the water accumulates on the east side of the railroad near the depot, and the two culverts mentioned are not large enough to carry the water to the west side of the tract as it used to run, and the water thus accumulated discharged itself down the railroad and across my farm, coming down on each side of said rail-road along the ditches of the company. In times of considerable rain the water gathers in large quantities and is made to flow into the basin or depression on my land, which gets three or four feet deep. This water comes right down the railroad from the town of Rosebud, and is by means of the railroad ditches discharged into this depression on my land. Of course, there is a small portion of this water running into the depression that comes from the west side of the railroad on my land. There is a considerable scope of country in Rosebud and its vicinity that drains down and the water is carried through these rail-road ditches onto my land and collects in this depression west of the railway, and when the rains are heavy it ponds up against the embank-ment and spreads out over the bottom and ruins my crops. The open-ings left by the railway company where it crosses the depression are too small for the flow of water and the water backs up and stands over the crop on the west side of the track, because it can not escape through the openings and it makes a pond or tank on the land; this pond or tank covers seven to ten acres. When the railroad was first constructed the ditch on the west side of the right of way extended along the road to Pond Creek, and by means of this ditch the water was discharged

into Pond Creek without injury to my tract of land up to the right of way, and I made good crops thereon. Since then the railway company fenced its right of way and has changed the ditch on the west side by the construction of a dam for a public road crossing, which has filled up the ditch below the depression and stopped the flow of water into Pond Creek, and the ditch itself has been stopped up and the water is all forced to discharge through the water gaps or culverts into my field east of the railroad." Witness then described the flow of the water and the injury to the crop and land as complained of in his petition.

J. K. Shirley testified: "My place of business is located about 225 yards east of the depot at Rosebud. The rainwater falling in the town of Rosebud flows west. I have seen the water two and a half feet deep on the main street which passes in front of my house and crosses the railroad at the depot. It would back up from the railroad embankment 150 yards up the street above my place. The water would flow toward the depot and would cross through the two culverts there, and a part would flow down on the east side of the railroad into plaintiff's land, crossing the railroad at the stock gap and flowing through plaintiff's field. The sewers at the depot were not sufficient to carry the water across the railroad. Of the water carried across the railroad by these sewers, a part flowed quartering towards the negro church and a part flowed down the railroad ditch on the west side into plaintiff's field. I have seen the water running down the railroad into the field; it looked like a little river running across Taylor's farm."

In view of the following testimony of appellant, who testified in his own behalf,—"When the railroad was first constructed the ditch on the west side of the right of way extended along the road to Pond Creek, and by means of this ditch the water was discharged into Pond Creek without injury to my tract of land up to the right of way, and I made good crops thereon. Since then the railway company fenced its right of way, and has changed the ditch on the west side by the construction of a dam for a public road crossing, which has filled up the ditch below the depression and stopped the flow of water into Pond Creek, and the ditch itself has been stopped up and the water is all forced to discharge through the water gaps or culverts into my field east of the railroad,"—we think the special charge asked by appellant and given by the court, in connection with the general charge, was sufficient to properly and fully instruct the jury upon all the issues raised by the pleadings and evidence; and therefore, there was no error in the refusal of the court to give appellant's other special charges.

In appellant's ninth assignment of error he contends that the court erred in giving defendant's special charge number 1, to the effect that if the jury believed that "if the plaintiff sustained any damage on account of the overflow he would not be entitled to recover at all for any damages he might have sustained on account of overflow from Pond

Creek." Appellant's ground of complaint to this charge is there was no pleading or evidence authorizing such charge. Appellant in his petition does not claim damages on account of overflows from Pond Creek; and there is testimony tending to show that appellant's land, or a portion thereof, was overflowed from Pond Creek. Appellant not being entitled to any damages on account of such overflows, it was not error for the court to give the special charge complained of.

The tenth assignment of error complains of the action of the court in giving defendant's special charge number 2, to the effect that "the plaintiff in law had no right to require the defendant to construct a channel for the drainage of his land along the line of its railway or elsewhere, and that it was its duty only to construct the necessary culverts and sluices as the natural lay of the land required." The court in this charge substantially followed the language used in the statute; and hence there was no error in giving the same. Rev. Stats., art. 4556.

Appellant in his eleventh assignment of error contends that the court erred in giving special charge number 3 requested by defendant, to the effect that if the jury believed that "the defendant company had constructed its railway in a proper, careful and scientific manner, according to the natural lay and drainage of the land in question, with the necessary culverts and sluices to reasonably carry off the rainfall, they would find for the defendant," because a similar instruction had been given in the main charge, and this was giving special emphasis to this feature of the case. We do not think the court gave this specific instruction to the jury in his general charge; and as one of the principal issues in the case was as to whether appellee had constructed its railway in a proper, careful and scientific manner, according to the natural lay and drainage of the land in question, it was not error for the court to give the charge complained of.

By his twelfth assignment of error appellant complains of the action of the court in giving special charge number 4 requested by the defendant, to the effect that "in no case is the plaintiff Taylor entitled to recover unless he satisfies you by a preponderance of the evidence that defendant company is guilty of the negligence complained of in plaintiff's pleadings, and then only for the proportion of the damages, if any, occasioned by his negligence, if any." Appellant claims that the court's main charge fully covered this feature of the law, and to give this special charge gave undue prominence to this feature of the case. There being testimony that appellant's land was sometimes overflowed by the waters from Pond Creek, and appellant not being entitled to any damage caused by such overflows, if there was damage caused by waters deflected from their natural course through the negligence of defendant, in connection with the overflows from Pond Creek, defendant would not be liable for more than the proportionate damage caused by its negligence. Hence, in our opinion, there was no error in the action of the court in giving the special charge complained of.

The thirteenth assignment of error complains of the action of the court below in permitting the witnesses Tom Harrell, Dick Ward, W. A. Clark and W. W. Hunnicutt,. and other witnesses in behalf of defendant, to give their opinions as to how the water would flow and affect plaintiff's land, whether there was any railroad there or not; and to state it as their opinion that the railroad had not been negligently constructed at the point in controversy, and to state that the same did not obstruct the water, or cause same to overflow plaintiff's land; because said witnesses nor either of them qualified as experts, and it was not shown from their testimony that they were present and saw the conditions about which they testified at the time they occurred.

Appellant's contention is that the opinion of an ordinary observer or nonexpert witness is not admissible upon questions of science and skill, and also that the opinion of a nonexpert witness is not admissible upon matters of common knowledge, unless from the nature of the subject it is impossible for the witness to detail all of the pertinent facts in order to enable the jury to form a conclusion without the witness. Without here repeating the testimony of these witnesses as contained in the record, we are of opinion they showed sufficient familiarity with appellant's lands and the usual rainfalls of that section to justify the court in admitting their testimony. International & G. N. Ry. Co. v. Klaus, 64 Texas, 293; Gulf C. & S. F. Ry. Co. v. Locker, 78 Texas, 279; Gulf C. & S. F. Ry. Co. v. Hepner, 83 Texas, 136; Gulf C. & S. F. Ry. Co. v. Haskell, 4 Texas Civ. App., 550; Sabine & E. T. Ry. Co. v. Hadnot, 67 Texas, 503.

In his fourteenth assignment of error appellant contends that the court erred in not granting him a new trial, because the verdict of the jury is against the weight of the evidence, and against the great preponderance thereof. There is a conflict in the testimony upon the principal issue in the case, and the jury trying the case have decided such conflict against appellant, and the trial court has refused him a new trial. Under such circumstances we do not feel authorized to disturb such verdict and judgment. Houston & T. C. Ry. Co. v. Loeffler, 59 S. W. Rep., 558; Texas & N. O. Ry. Co. v. Lee, 74 S. W. Rep., 345; Houston & T. C. Ry. Co. v. Rowell, 45 S. W. Rep., 763.

In his fifteenth assignment of error appellant contends that the court below erred in refusing to grant him a new trial on the ground of newly discovered testimony. This assignment does not comply with the rules of court. It does not point out the specific error complained of; there is no proposition submitted under it, and no statement; and therefore, it should not be considered by this court. However, we are inclined to the opinion that the alleged newly discovered evidence would be, to some extent, cumulative of other testimony adduced upon the trial.

There being no reversible error pointed out, the judgment of the court below is affirmed.

*Affirmed.*

Writ of error refused January 19, 1905.