## HOWARD et al. v. NORTH TEXAS COMPRESS & WAREHOUSE CO. (No. 9723.)*

(Court of Civil Appeals of Texas. Fort Worth. Jan. 21, 1922. Rehearing Denied Feb. 18, 1922.)

I. **Limitation of actions ⬤⟿55(6)—Cause of action for injury accrues only when injury sustained.**

When an act is within itself lawful as to the person who bases thereon an action for injuries to property subsequently accruing from and consequent upon the act, the cause of action does not accrue till the injury is sustained.

2. **Limitation of actions ⬤⟿55(6)—Time for accrual of cause of action from private nuisance stated.**

Where a nuisance is permanent in character, and its construction and continuance are necessarily an injury, the damage is original and may be at once fully compensated, and the statute begins to run upon construction, but when the construction and continuance are not injurious, but may be so, the injury to be compensated is only the damage which has happened, and there may be successive suits for successive injuries, and limitation would not begin to run against actions until the injury occurred.

3. **Limitation of actions ⬤⟿55(7)—Cause of action for impounding waters in street did not accrue until condition resulting caused injury.**

A cause of action for wrongfully impounding and turning waters into the street in front of plaintiffs' residence did not arise, as respects the statute of limitations, until such condition caused injury to plaintiffs' property and health.

---

Appeal from District Court, Cooke County; C. R. Pearman, Judge.

Action by Sarah E. and Robert Howard against North Texas Compress Company. From a judgment on directed verdict for defendant, plaintiff appeals. Reversed and remanded.

Garnett & Garnett, of Gainesville, for appellant.

W. O. Davis and Fred E. Waukan, both of Gainesville, for appellee.

BUCK, J. This is a suit brought by appellants to recover of appellee damages on account of appellee's alleged wrongful and unlawful impounding the waters and diverting the rainfall and surface waters which fell upon appellee's compress, and turning said waters into the street which fronted appellants', hereinafter called plaintiffs' property. It was alleged that the flow of water had been in an easterly direction from plaintiffs' home and the street in front thereof, and that the water had run under the platform or dock of the defendant, covering about an acre of land. It was shown by the evidence that a roof was put over the platform, probably in 1914, and that gutters were put around the roof which emptied into a number of metal downspouts, and that these downspouts caused the water which fell on top of the roof of the defendant's property to be emptied on the ground across the street from plaintiffs' property; and also that a wall was sunk into the ground on the west side of the defendant's property, which prevented the water from flowing under the platform or flooring of the compress. It was further alleged that within two years from the filing of the suit defendant had constructed concrete ditches to carry off the water which emptied out of these downspouts, and had raised the ground adjacent to defendant's walls, and caused the water to flow into the street and onto plaintiffs' land. Proper allegations of damages were made, and it was alleged that damages had accrued since December, 1918. The suit was filed on November 22, 1920. Defendant answered by certain special exceptions, and specially pleaded the statute of two and four years limitation in bar of any damages which plaintiffs might have sustained by reason of the construction of the roof, guttering, downspouts, etc. Evidence was introduced by both parties, and at the conclusion the court instructed the jury to return a verdict in favor of the defendant upon its plea of limitation. From this judgment the plaintiffs have appealed.

There is only one question to be considered in the consideration of this appeal, to wit, did the trial court err in directing a verdict for the defendant upon its plea of limitation? The evidence unmistakably shows that the roof to the compress and the guttering and downspouts were all constructed more than two years prior to the filing of the suit. But the plaintiff Robert Howard testified, in part, as follows:

"From the plaintiff's property the slope of the land is to the east and southeast, and the natural flow of water is in that direction, and empties into Pecan creek. That is according to the natural lay of the land. The average fall across the compress property is about 18 inches. The cotton platform was built before I knew the property. Until the sheds were built the water falling on the compress flowed east and southeast. The platform varied in height above the ground from probably 16 or 18 inches at the north end, getting a little higher as it sloped east. * * * When the compress was built there the waters from the shed did not injure us in any way. * * * The compress people banked up on the east side of the street and under their platform, and piled dirt and forced the water over to the west side of the street. Since December, 1918, this had a bad effect on plaintiff's property. Plaintiff's property was first injured by these waters about December, 1918. I am familiar with the compress property, and the construction and methods of disposing of the water, and have made a plat showing the conditions. The compress company uses 11 metal pipes which dump the water into the street. All of them are about 10 inches, except one. * * * Last spring from downspouts D. E. I. J. and K. concrete depressions or gutters were made leading from the downspouts about 30 feet west into Moran street. These gutters or depressions carry the water from the downspouts to the west side of the street. I don't know of any provision to take care of the water when it gets to our side of the street. These concrete drains extend about two-thirds of the way across the street. Before these concrete drains were made the water would wash holes in the street so you couldn't get through it at all. The water falling west of Moran street hasn't flowed east since December, 1918. Up to that time they ran across the street and did not bother us. From December, 1918, it has been gradually filling up underneath a little at a time until the water could not get under that way at all. My wife's property first suffered damage in December, 1918. The pouring of these waters into North Moran street gradually filled the street—muddy, mushy; the traffic wore out big holes; slushy; couldn't get along; and coming west in doing so got clear up on our sidewalk, and finally cut across the corner of our yard. It filled the street with mud and filthy water, and stood there continually. I don't recollect of its drying up since December, 1918. If it did, I don't recall it. Cars would stick and bog up there. We couldn't get in the house to and from work, roomers wouldn't come to room with us, and everything would mold and mildew. The wall paper was ruined. The delivery man wouldn't deliver us groceries when we ordered them."

Other testimony to the same effect as to the character of damage, and as to the date

of its beginning, was given by both plaintiffs and other witnesses.

[1] When an act is within itself lawful as to the person who bases thereon an action for injuries subsequently accruing from and consequent upon the act, the cause of action does not accrue until the injury is sustained. Water Works Co. v. Kennedy, 70 Tex. 233, 8 S. W. 37. In this case Kennedy brought suit to recover damages alleged to have resulted from injury to a house owned by him, which he claimed was caused by the making of an arch by the appellant in placing a water pipe in the building. The suit was brought more than two years after the arch was cut, but within two years from the settling of the corner of the house and the cracking of the walls, which plaintiff alleged to have been caused by the cutting of the arch. The court said:

"If it be true that the cause of action accrued at the time the arch was cut, then the action was barred. The action was one that would be barred in two years after the cause of action accrued, and the inquiry is, when did the cause of action accrue? The arch and house alleged to have been injured were the property of the appellee at the time the arch was cut. This was an act wrongful toward the owner of the property, for which an action might have been maintained as soon as the tort was committed."

[2] Where a nuisance is of a permanent character, and its construction and continuance are necessarily an injury, the damage is original, and may be at once fully compensated. In such case, the statute of limitations begins to run upon the construction of the nuisance. But when the structure is permanent in its character, and its construction and continuance are not necessarily injurious, but may or may not be so, the injury to be compensated in a suit is only the damage which has happened, and there may be as many successive recoveries as there are successive injuries, and hence limitation would not begin to run against actions for damages until the injury out of which the damages arose occurred. In Parsons v. Uvalde Electric Light Co., 106 Tex. 212, 163 S. W. 1, L. R. A. 1916E, 960, the Supreme Court, speaking through Chief Justice Brown, says:

"The sole question presented to us is: Did the right of action for damages to the plaintiff and his wife, by reason of the operation of the machinery, accrue at the time the machinery was put into operation and require that all future damages should be recovered in the one action?

"The rules of law which must govern in the decision of this case are clearly stated thus: 'Wherever the nuisance is of a permanent character, and its construction and continuance are necessarily an injury, the damage is original and may be at once fully compensated. In such case, the statute of limitations begins to run upon the construction of the nuisance.

* * * But when such structure is permanent in its character, and its construction and continuance are not necessarily injurious, but may or may not be so, the injury to be compensated in a suit is only the damage which has happened; and there may be as many successive recoveries as there are successive injuries. In such case, the statute of limitations begins to run from the happening of the injury complained of.' St. Louis, Iron Mountain & Southern R. Co. v. Biggs, 52 Ark. 240, 12 S. W. 331, 6 L. R. A. 804, 20 Am. St. Rep. 174."

In the case of M., K. & T. Ry. Co. v. Anderson, 194 S. W. 662, this court said:

"In Railway Co. v. Goldman, 8 Tex. Civ. App. 257, 28 S. W. 267, writ denied, 87 Tex. 567, 29 S. W. 1062, it was held that limitation commenced to run when the deterioration in value of the farm began, citing Wood on Nuisances, 996; Angell on Limitations, § 300. The rule laid down by Wood is given, to wit: 'When the original nuisance is of a permanent character, so that the damage inflicted thereby is of a permanent character, and goes to the entire destruction of the estate affected thereby, a recovery not only may, but must, be had for the entire damage in one action, as the damage is deemed to be original; and as the entire damage accrues from the time the nuisance is created, and only one recovery can be had, the statute of limitation begins to run from the time of its erection against the owner of the estate or estates affected thereby.' * * *

"From the cases cited and many others which might be cited from the courts of this and other states, we have reached the conclusion that those assignments directed to the refusal of the court to give a peremptory instruction in behalf of defendant must be overruled. It is true that in perhaps two of the cases cited the cause of the obstruction to the natural flow of rainfall might reasonably be said not to be of so permanent a character as that here shown, and appellant urges that these cases are therefore not applicable. But in most of the cases cited the obstruction was caused by embankments, dams, etc., structures of a permanent character, and, moreover, we understand the rule to be, as stated above, that the test is not whether the obstruction was of a permanent character, but whether the injury or damage inflicted was of a permanent character, in order that the statute of limitations might be successfully pleaded in bar."

In the last-cited case, the court said further:

"In an owner's action for damages from the diversion of a natural stream or flow of water by an obstruction constructed by a railroad, the injury is to be regarded as permanent, where the cost of remedying it would be so great as to justify the railroad in condemning the property and taking it under the power of eminent domain. But if the injury can be remedied at a reasonable expense, it may be regarded as temporary, and the question whether the injury is permanent or temporary may be for the jury. M., H. & E. Railway Co. v. Graham, 147 Ky. 604, 144 S. W. 737."

In the case of Town of Jacksonville .v. Mc-Cracken (Tex. Com. App.) 232 S. W. 294, the Commission of Appeals of Texas says:

"The Court of Civil Appeals held that plaintiffs' right of action for damage to their land was barred by the two-year statute of limitation, because such damage was susceptible of ascertainment when the use of the septic tank began in September, 1913. The construction of the tank was upon land owned by the city. Its existence or operation did not necessarily create a nuisance to plaintiffs, nor was its operation primarily injurious. It only became so by the manner of its negligent or wrongful use. The jury found that the operation or use of the tank did not begin to become offensive to plaintiffs to such an extent as to affect them in the comfort and enjoyment of their home until July, 1914. No cause of action in favor of plaintiffs in error arose until this consequential injury resulted; therefore the statute of limitation did not begin to run until this invasion to plaintiff's property upon that date. Grossman v. Railway Co., 99 Tex. 641, 92 S. W. 836; Parsons v. Light Co., 106 Tex. 212, 163 S. W. 1; L. R. A. 1916E, 960."

In Ft. W. & D. C. Ry. Co. v. Speer, 212 S. W. 762, this question of the operation of the statute of limitation against the cause of action was under consideration, and this court said:

"In the instant case it does not appear that the construction of the bridge as built was unlawful, or that at the time of the building there was any invasion of the rights of the plaintiff or any injury to his land. It was only upon the occasion of heavy rains and consequent increased flow of water down the stream that the impediment created such an obstruction as caused the water to overflow plaintiff's lands and injure them and the crops thereon. In Railway Co. v. Anderson, 79 Tex. 427, 15 S. W. 484, 23 Am. St. Rep. 350, our Supreme Court laid down the rule that where a nuisance is permanent and continuing the damages resulting from it should all be litigated in one suit, but when it is not permanent, but depends upon accidents and contingencies, so that it is of a transient character, successive actions may be brought for injury as it occurs; and an action for such injury would not be barred by the statute of limitations unless the full period of the statute had run against the special injury before the ' suit," citing cases.

[3] We conclude from the authorities cited, and many others in point which we have read and might cite, and giving full credit to the testimony of plaintiffs to the effect that the injury to their property and to their health was not caused until December, 1918, that the trial court erred in giving the peremptory instruction for the defendant. Hence the judgment of the trial court will be reversed, and the cause remanded for further proceedings not inconsistent with this judgment.

⊚⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes