## WICHITA VALLEY RY. CO. v. MARSHALL.
### No. 3549.

Court of Civil Appeals of Texas. Amarillo.
Feb. 14, 1931.

Rehearing Denied March 11, 1931.

Coombes & Andrews, of Stamford, and Thompson & Barwise, of Fort Worth, for appellant.

W. D. Wilson, of Spur, for appellee.

JACKSON, J.

This suit was instituted in the district court of Dickens county, Tex., on March 5, 1930, by the plaintiff, W. P. Marshall, to recover damages alleged to have been caused to his land by the defendant, the Wichita Valley Railway Company.

The plaintiff alleges that he is the owner of the N.W. ¼ of survey No. 167, block 1, in Dickens' county, Texas. That Wilson creek rises about ten miles north of his land, flows in a southerly direction, crosses the eastern part of survey No. 191 and the southwest corner of survey No. 192, located immediately east of survey No. 191, and enters his quarter section, which lies immediately south of No. 192, near the northwest corner of said quarter section, continues through the west side thereof and empties into Duck creek near the southwest corner of said survey No. 167.

That the defendant owns and operates a line of railway which traverses survey 191 and crosses Wilson creek on said survey at a point about one-half mile in a northerly direction from plaintiff's land. That, in building the railroad across Wilson creek, an embankment about fifteen feet in height was erected across said creek upon which the railroad track is placed, and that this embankment impounded on the north side thereof water which at all times is from one to

fifteen feet in depth and constitutes a lake covering about one hundred and twenty-five acres. That no culverts or sluices were constructed for the water to pass through or under said embankment, but the water was impounded for the use and benefit of the defendant. That about April, 1925, a large part of said embankment was washed away, but was rebuilt in 1927 for the purpose of impounding water in the lake for the use and benefit of the defendant, and no openings were left through or under the embankment for the water to escape and continue its natural flow down Wilson creek across plaintiff's land into Duck creek. That plaintiff's land is twelve to fifteen feet lower than the surface of the water in the lake, and said water seeps and percolates through the embankment or dam and passes down Wilson creek onto plaintiff's land to such an extent that the channel of said creek is continually filled with water, and plaintiff's cultivated lands for a considerable distance on either side of the creek have been kept wet until the soil has become water-logged. That the water dissolves and absorbs gyp, alkali, and other mineral substances in the embankment and the ground through which it seeps, and has impregnated plaintiff's land with mineral substances to such an extent as to destroy the soil, kill the trees and vegetation thereon, and render the land wholly unfit for cultivation and worthless for any purpose. That prior to the time the railway embankment was washed away, the seepage and percolation of the water from the land was not sufficient to injure plaintiff's land, but since the rebuilding of the embankment, and within two years prior to the filing of this suit, said seepage and percolation from the lake has so watersoaked and impregnated plaintiff's land with mineral substances that it will not produce crops or vegetation of any kind and has become worthless and without value for any purpose. That the value of about twenty acres of plaintiff's land has been destroyed, and the value of some additional ten acres has been damaged. That plaintiff's said land was very rich and productive and was of the reasonable market value of $100 per acre before it was so damaged and destroyed.

That plaintiff has been damaged in the sum of $2,500 as the direct and proximate result of keeping his land wet and water-soaked and impregnated with mineral substances by the seepage and percolation of the water from said lake onto and under his land, for all of which he sues.

On September 10, 1930, the defendant answered by general demurrer, special exceptions, and general denial, pleaded the two years' statute of limitation, and alleged as a defense that, at the time the embankment was constructed, the Swensons were the owners of the property adjoining the dam and also the property now claimed by the plaintiff, and by a contract in writing the Swensons agreed that the embankment could be constructed and the water impounded, all of which was known to the plaintiff at the time he purchased his property, and that his said land is subject to the terms and conditions of said contract, for which reason plaintiff is not entitled to recover.

The plaintiff, in a supplemental petition, pleaded a general denial to the defendant's answer.

In response to special issues submitted by the court the jury found, in substance, that, within the two years immediately preceding March 5, 1930, the water impounded in the lake by the embankment of the railroad percolated through said embankment onto and under plaintiff's land; that within said two years the plaintiff's land was injured by said water; that the percolation of said water onto and under plaintiff's land within the said two years prior to March 5, 1930, was the proximate cause of plaintiff's damages; that within said two years the value of.twelve acres of plaintiff's land was wholly and permanently destroyed by the water, and that the value of plaintiff's land so destroyed, immediately prior to the damage thereof, was $70 per acre.

On these findings, judgment was rendered in favor of the plaintiff against the defendant in the sum of $840, with interest from the date thereof at the rate of 6 per cent. per annum and costs of suit, from which judgment this appeal is prosecuted.

The appellant challenges as error the action of the trial court in excluding, upon objection, the written agreement between it and the Swensons, because the evidence shows that appellee bought his property with notice of appellant's right under the contract, to construct the embankment without culverts and sluices, and he is bound by the terms of said contract.

The written contract which the appellant sought to introduce discloses that the railway company leased for tank or reservoir purposes certain lands located on survey 191 and survey 204, block 1, all of which is described by metes and bounds. That the railway company agreed to maintain and keep said embankment in complete order, and that the Swensons were to use water from the lake for their cattle without charge. This written contract nowhere mentions or describes appellee's land. The uncontroverted record discloses that appellee's land is on survey 167 and is approximately one-half mile south of the embankment and lake. The appellee testified that, while he knew of the embankment and lake, he had no actual notice of the provisions of the contract, and that he was advised by his lawyer that the abstract disclosed a good title to his grantor at the time he purchased the land.

In our opinion, plaintiff's land was not burdened or incumbered by the rights held by appellant under the contract for the maintenance of the lake on the land described in the contract. While it authorized the construction of the dam without culverts or sluices, it obligated the appellant to maintain and keep the embankment in complete order, and contained no express provision relieving it of damages and no implied provision that it would not be responsible for damages sustained by lands not described in the contract.

The appellee was not required to allege and prove that the appellant was negligent in the construction or maintenance of the dam. Texas & P. Ry. Co. v. Frazer (Tex. Civ. App.) 182 S. W. 1161, and authorities cited.

The written contract, although recorded in the deed records of Dickens county, Tex., at the time appellee purchased his land, was not constructive notice to appellee, because the registration of an instrument carries notice of its contents only to those bound to search the record for such instrument. Leonard v. Benfford Lumber Co., 110 Tex. 83, 216 S. W. 382, and authorities cited.

The written contract sought to be introduced constituted no part of plaintiff's chain of title, and he was not required to search the record for any instrument not included in his chain of title, and not required to take notice of any instrument on the record which did not constitute any part of his chain of title. White et al. v. McGregor et al., 92 Tex. 558, 50 S. W. 564, 71 Am. St. Rep. 875.

The fact that he acquired the land after the embankment was constructed would not defeat his right to recover. St. Louis & S. W. Ry. Co. of Texas v. Clayton, 54 Tex. Civ. App. 512, 118 S. W. 248.

Appellant also urges as error the action of the trial court in excluding certain deeds which disclose that the N.W. ¼ of survey 167, block 1, involved in this controversy, was acquired from the Swensons by F. W. West. That he conveyed the land to W. T. Wilson, who conveyed it to the appellee, but none of these instruments mention or refer to the written contract between the Swensons and appellant or the lands described in said contract, and what we have heretofore said disposes of these assignments.

The appellant challenges as error the action of the trial court in refusing to direct a verdict in its behalf, because the testimony discloses that appellee's cause of action, if any he had, was barred by the two-year statute of limitation (Rev. St. 1925, art. 5526).

The uncontroverted testimony shows that appellee made good crops on the land he claims was destroyed, in the years 1926 and 1927, and that said land was not damaged by becoming water-soaked or impregnated with minerals until the year 1928. That in the years 1928 and 1929, notwithstanding he planted crops on the land, the seed planted did not germinate because of the water-soaked and impregnated condition of the soil.

Under this record, the appellant was authorized to construct the embankment, and its act in so doing was lawful, and appellee could make no complaint and maintain no suit for injury until he sustained damages.

"When an act is in itself lawful as to the person who bases an action on injuries subsequently accruing from, and consequent upon, the act, it is held that the cause of action does not accrue until the injury is sustained." Houston Water-Works v. Kennedy, 70 Tex. 233, 8 S. W. 36, 37.

The appellant's embankment was not built on appellee's land, and his injury did not result from the construction of the embankment, but from the percolation and seeping of the water through the embankment by which his land was water-logged and impregnated with mineral, and his cause of action did not arise until he was damaged.

"In actions in the nature of a nuisance in which there has been no actual invasion of plaintiff's land, as a general rule, the first right of action does not arise until some injury has been suffered, no matter when the cause of injury occurred." Trinity Portland Cement Co. v. Horton et al. (Tex. Civ. App.) 214 S. W. 510, 511; St. Louis, S. W. Ry. Co. of Texas v. Clayton, supra; Southwestern Portland Cement Co. et al. v. Kezer (Tex. Civ. App.) 174 S. W. 661 (writ refused); Missouri, K. & T. Ry. Co. v. Anderson (Tex. Civ. App.) 194 S. W. 662; Howard et al. v. North Texas Compress & Warehouse Co. (Tex. Civ. App.) 238 S. W. 282; Wichita County Water Improvement District No. 1 v. McGrath (Tex. Civ. App.) 31 S.W.(2d) 457.

In view of the instructions of the court on limitation, these authorities, in our opinion, also dispose of appellant's assignments in which it presents as error the action of the trial court in refusing to give certain requested issues on the question of limitation.

The appellant challenges as error the action of the trial court in refusing to submit to the jury its special issue as to whether the injury or damage to appellee's land was contributed to by water from sources other than seepage or percolation through appellant's dam.

The appellant, having pleaded general denial, was authorized to show that appellee's damage was attributable to causes independent of any of its acts. San Antonio & A. P. Ry. Co. v. Gurley, 37 Tex. Civ. App. 283, 83 S. W. 842, 844.

The testimony shows that the railroad embankment was built across Wilson creek in 1909; that it washed out in 1925 and was reconstructed in January, 1926. That said creek

ran through appellee's land and emptied into Duck creek near the southwest corner of survey No. 167. That in 1911 the water overflowed the banks of Duck creek and backed up into Wilson creek, and, when it receded, left a sand bar at the mouth of Wilson creek that impeded the flow of the water from Wilson creek into Duck creek. That at irregular intervals thereafter, up to and including the year 1930, Duck creek overflowed its banks, and appellee's land was covered with the flood waters therefrom, which would remain on his land one to two days at a time. That the overflow from Duck creek deposited on plaintiff's land sediment which had largely filled up Wilson creek and changed the channel thereof into a wide slough or lake. That the land that appellee claims to have been damaged was largely built up of such sediment.

There is testimony to the effect that there is gyp land all over that immediate country; that the water from Duck creek contains gyp or mineral, and, when appellee's land was overflowed thereby, the water deposited gyp or alkali thereon. That appellee's land has always contained gyp. That other lands in that vicinity close to Duck creek had been impregnated with gyp and mineral.

In Taylor v. S. A. & A. P. Ry. Co., 36 Tex. Civ. App. 658, 83 S. W. 738, 746, the court says: "There being testimony that appellant's land was sometimes overflowed by the waters from Pond creek, and appellant not being entitled to any damage caused by such overflows, if there was damage caused by waters deflected from their natural course through the negligence of defendant, in connection with the overflows from Pond creek, defendant would not be liable for more than the proportionate damage caused by its negligence."

In San Antonio & A. P. Ry. Co. v. Gurley, supra, the court says: "The plaintiff's petition only complains of the waters from Bull Hide creek. There is some evidence in the record tending to show that the overflows from the Brazos river during the time complained of may have been in part a cause of the plaintiff's damages. Or, in other words, that it was not solely the waters from Bull Hide creek, but the overflows therefrom, in connection with the overflow from the Brazos, caused the damages. The charge of the court did not expressly present to the jury the right of the defendant to have considered what effect in part the waters from the Brazos might have had in producing injury to the rental value of the land. If some of the damages could be traced to the overflows from the Brazos, the appellant could not be held responsible, as it was not pleaded nor proven that the faulty construction of the railway caused the water from the Brazos to flow over the plaintiff's land." Houston & T. C. Ry. Co. v. Hanson (Tex. Civ. App.) 227 S. W. 375.

This assignment is sustained.

 The appellant attacks as error the action of the trial court in refusing to submit its requested issue to have the jury determine whether or not the damage, if any, to plaintiff's land was temporary and such as could be remedied by drainage, because such issue was presented by the pleadings and the evidence.

The uncontroverted testimony is that appellee's land could be drained at a very slight expense. That 1930 was a very dry year. That the seepage from the lake of appellant was not as much as it had been in preceding years and appellee's land had partially dried out. That while no crop of any kind was planted by appellee, the land which he claims to have been destroyed was covered with sunflowers higher than a man's head. There is also testimony to the effect that there was a growth of mesquite on said land, and that during the years 1928 and 1929 the land did not grow any kind of vegetation.

There is also testimony to the effect that plaintiff planted his land on the east side of Wilson creek (which is a part of the land in controversy) in alfalfa in the year 1918. That water escaping through a pipe in the dam caused the soil to become so wet and water-soaked that the alfalfa was killed. That appellee sued appellant for damages on account of the destruction of his alfalfa by the water from the lake, and in 1922 a settlement was had between them and the pipe removed from the dam.

Mr. W. T. Wilson, a witness for the plaintiff, testified: "At the time Mr. Dooley called my attention to the outcropping of gyp I don't believe I had noticed it at that time. Up to that time I had not noticed any outcroppings on Mr. Marshall's place. The first thing I knew of it hurting down there was some alfalfa. That was when Mr. Marshall brought the suit. You could pull up the stalks and all of the roots would be rotten."

The testimony also shows that, after appellee's alfalfa had been destroyed and the pipe was removed from the dam, the land continued to grow good crops until 1928. The appellee himself testified, in substance, that if the spillway to the lake was fixed, and the water did not seep through the dam, he did not think it would injure him any more.

The testimony tends to show that, because 1930 was a dry year, less water from the lake reached appellee's land than in either of the years from 1926 to 1929, inclusive. That in 1930 weeds, sunflowers, and mesquite grew on appellee's land. That the portion of his land in controversy lying on the east side of the creek where his alfalfa was killed was, in 1922, to some extent impregnated with mineral, in addition to being water-soaked. That after the pipe was removed, and the land relieved from the water flowing through it, said land produced good crops until 1928.

This evidence, together with other facts and circumstances in the record, we think, presents an issue as to whether the draining of the land would remedy or improve its condition. If draining the land would remedy its condition, then the damage thereto is temporary and not permanent, and appellant was entitled to have such issue determined by the jury.

For the errors discussed, the judgment is reversed, and the cause remanded.