## San Antonio & Aransas Pass Railway Company v. John Gurley.

### Decided November 30, 1904.

**1.—Overflow—Pleading—Evidence.**

In a petition claiming damages to plaintiff's land by overflow so injuring it that it became impossible to rent it, it was not necessary to allege that plaintiff had made an effort to rent the land, and evidence of his unsuccessful efforts to rent it was admissible in proof of the damages alleged.

**2.—Overflow—Damages.**

One whose land has been overflowed by the faulty construction of a railway embankment may recover, as an element of damages, the expense of building bridges and roads thereon made necessary by such overflow; such damages were not remote nor speculative.

**3.—Overflow—Drainage—Negligence.**

A railway constructing its roadbed without the culverts and sluices required for the necessary drainage of the land is liable, although such road was constructed with proper care and skill.

**4.—Overflow—Charge.**

Where plaintiff's petition complained only of damages to his land by overflow of the waters of a certain creek alleged to have been obstructed by the railway embankment, and the evidence showed overflows coming partly from the Brazos River, defendant was entitled to a requested instruction excluding from the consideration of the jury damages caused by water coming from the Brazos River although the charge given confined his recovery to damages from waters caused by the construction of the railway.

**5.—Overflow—Wrongful Act of Third Party.**

If the overflow causing injury to plaintiff's land was caused wholly by the act of a third party in constructing a levee, defendant railway company was not responsible, and if caused in part by such levee and in part by the railway embankment, the railway is liable only for such damage as was caused by its embankment; but if such third party and the railway act in concert in the construction of the levee the railway could be held for the damages occasioned both by such levee and its own embankment.

**6.—Overflow of Land—Subsequent Purchaser.**

One who purchased land with knowledge of the faulty construction of a railway rendering it liable to overflow, is not precluded from recovering damages inflicted upon the land by such construction after he purchased it.

**7.—Damages—Loss of Rental Value—Pleading.**

Where plaintiff claimed damages for loss of rental value of his land through overflow occasioned by construction of defendant's railway, the latter, under a general denial, was entitled to prove that the loss of rental value shown during certain years was attributable to other causes than the overflow.

**8.—Overflow—Cause of Action.**

Though the waters of a creek may have flooded plaintiff's land in ordinary freshets before the construction of a railway, the company is not therefore relieved from liability for damages caused by its diversion of the channel of the creek so as to cause it to flow elsewhere on plaintiff's land to his damage.

**9.—Overflow—Unprecedented Floods.**

Evidence held to require the submission of the issue as to unprecedented flood as a defense, and authorities indicating the proper charge on such issue pointed out.

Appeal from the District Court of McLennan. Tried below before Hon. Marshall Surratt.

*A. W. Houston* and *W. S. Baker,* for appellant.—There is no allegation that plaintiff made any effort to rent the land at any time to any one, and this is not only a ne essary allegation in a suit for rental values, but the defendant was entitled to be apprised of the facts relied on for a recovery.

The court erred in overruling the defendant's special exception to that portion of plaintiff's petition whereby he seeks to recover one thousand dollars on account of the building of bridges, roads, loss of time and expense of passing his property from one side to the other, because too remote and speculative and not a proper measure of damage in this cause.

The charge instructs the jury to find for the plaintiff if they believe the facts therein stated, regardless whether or not such facts constitute negligence, and is upon the weight of the evidence, and is not the law in the case. Houston & G. N. Ry. Co. v. Miller, 51 Texas, 275; Texas & P. Ry. Co. v. Murphy, 46 Texas, 364; Campbell v. Trimble, 75 Texas, 271; Galveston, H. & S. A. Ry. Co. v. Porfert, 72 Texas, 351; Gulf, C. & S. F. Ry. Co. v. Gasscamp, 69 Texas, 547; Texas & P. Ry. Co. v. Chapman, 57 Texas, 75; Texas & P. Ry. Co. v. Wright, 62 Texas, 515; Missouri P. Ry. Co. v. Lee, 70 Texas, 496; Houston & G. N. Ry. Co. v. Randall, 50 Texas, 260.

The court erred in refusing to charge the jury as requested by the defendant to the effect that if the Brazos River caused the damage complained of and not Bull Hide Creek, to find for the defendant, because the plaintiff had no right to recover if he could not rent his lands on account of the waters from the Brazos River.

The court erred in refusing to charge the jury as requested by the defendant, that if the injury in question was occasioned in part by the waters of the Brazos River, and in part by the waters of Bull Hide Creek, that the defendant would be liable only for such proportion of the damages as was caused by the waters of Bull Hide Creek, because the plaintiff does not complain of the waters of the Brazos River, and the evidence shows that the waters of the Brazos River contributed to the injury, if any, complained of. Austin & N. W. Ry. Co. v. Anderson, 79 Texas, 434.

The court erred in refusing to charge the jury as requested by the defendant to the effect that if the levee built by Norwood caused the change in the channel of Bull Hide Creek, to find for the defendant, because he had the right to show any fact that occasioned the injury complained of, and because there was evidence tending to show that the Norwood levee tended to change the channel of Bull Hide Creek.

The court erred in refusing to charge the jury as requested by the defendant to the effect that if the plaintiff was acquainted with the negligence complained of at the time he bought the land in question in 1889, that he would not be entitled to recover in this cause.

The pleadings and evidence showed unprecedented overflows and the court should have charged on the subject or given the requested charge.

St. Louis & S. F. Ry. Co. v. Craigo, 10 Texas Civ. App., 238; Sabine & E. T. Ry. Co. v. Wood, 69 Texas, 681.

*Taylor & Gallagher* and *Sleeper & Kendall,* for appellee.—The question as to whether or not the rental value of the plaintiff's land was destroyed under the pleadings, was a question of evidence, and it was not necessary for the plaintiff to plead that he had made efforts to rent the said land.

The fact that plaintiff was required to build bridges and roads in order to pass from one portion of his property to another, caused by the unlawful act of defendant in turning Bull Hide stream from its natural channel and causing the same to flow across the lands of the appellee, constituted a proper element of damage, and the same was neither remote nor speculative. Galveston, H. & S. A. Ry. Co. v. Tait, 63 Texas, 224.

The authorities show that any one who diverts or is concerned in diverting water from its natural channel and who causes the same to be concentrated and deposited upon the land of another is liable for the damage thereby occasioned. It is a breach of legal duty which can not be excused by any plea of accident or innocent intention. Rev. Stat., art. 4436; Austin & N. W. Ry. Co. v. Anderson, 79 Texas, 433; Galveston, H. & S. A. Ry. Co. v. Tait, 63 Texas, 225; St. Louis & S. F. Ry. Co. v. Craigo, 10 Texas Civ. App., 244; Gembler v. Echterhoff, 57 S. W. Rep., 313; Texas & P. Ry. Co. v. O'Mahoney, 50 S. W. Rep., 1051; Texas & P. Ry. Co. v. O'Mahoney, 60 S. W. Rep. 902.

The measure of plaintiff's damage would not be the difference in the rental value of the land between the time when the water was actually on the land and what such rent would be if defendant had not turned the water on plaintiff as alleged, but it is the difference in rental value resulting from the consequences of the overflow, regardless of the time during which the land was actually submerged. City of San Antonio v. Mackey's Estate, 22 Texas Civ. App., 147; Gembler v. Echterhoff, 57 S. W. Rep., 313; Comminge & Geisler v. Stevenson, 76 Texas, 647.

The court did not err in refusing the charges requested by defendant as complained of in the above mentioned assignments of error for the reason that in his main charge to the jury they were instructed that plaintiff could not recover for any damage sustained by him by reason of any water, whether from the Brazos or Bull Hide, that would have flowed upon his land had the railway embankment been constructed in a proper manner, or not constructed at all.

FISHER, CHIEF JUSTICE.—This is a suit by Gurley against the railway company for the recovery of damages alleged to have occurred as a result of overflows on the land of appellee caused by the improper construction of appellant's railway and the opening of its borrow pits and ditches, and also for the value of certain improvements in the nature of bridges, etc., erected by Gurley, which was necessary to be erected after appellant had caused the land to be overflowed.

The plaintiff's petition substantially alleges that prior to the construction of the railway the waters of Bull Hide Creek flowed into the Brazos

River and drained a great portion of the country adjacent to the stream; that the appellant constructed its road across the creek, and constructed railway embankments from two and a half to five feet in height, extending about one-half mile north of the main channel of Bull Hide Creek, and about two miles south of the main channel of the creek, leaving insufficient openings for the waters of the creek to pass through, and improperly located the openings in said embankment; and also constructed and authorized and permitted to be constructed a dam or embankment from two to three feet high across the east side of the right of way, and connecting with the said embankment at an angle of about 45 degrees, opening southward just above the channel of Bull Hide Creek; that by reason of the improper construction of said embankment, and the failure to leave sufficient openings, and the failure to properly locate the same, the waters of the creek were impeded and ceased to flow in their natural channel into the Brazos River, and were turned into the direction of and on the land of the plaintiff, flowing down said embankment in a southerly direction into and over the borrow pits of appellant, and that in order to facilitate the flow of the water down said embankment onto and over the land of the appellee, the appellant deepened and widened the borrow pits from time to time, and eventually changed the bed of the creek, and caused the same to flow in a continuous stream down along the embankment, and thereby threw the water coming down Bull Hide Creek on the lands of the appellee, whereby the same were rendered unfit for cultivation, pasturage or any other use whatever, so that their rental value was in effect destroyed.

The appellant's answer contains special exceptions, a general denial, and special pleas wherein it is alleged (1) that if the appellee was the owner of the land in controversy that he acquired the same after construction of appellant's roadbed, and with full knowledge of the condition complained of by him; (2) that the lands of appellee have always been low and flat, and are located near what is called "the scatters" of Bull Hide Creek, and where there is no well defined channel, and where, in case of high water, the entire section is overflowed and inundated; (3) that the overflows during the years complained of were unprecedented in the history of Bull Hide Creek; (4) that the appellant owned its right of way 100 feet wide since 1889, through the lands named in plaintiff's petition, and has used the same for railway purposes ever since, and that appellant's roadbed is constructed in a careful and scientific manner, with the necessary sluices and culverts for the natural drainage of the land lying in that vicinity, and that if appellant's road had never been built, appellee would suffer the same inconvenience and damages of which he complains from the waters of Bull Hide Creek and its tributaries and the Brazos River; (5) the appellant pleaded the statutes of two years' limitation.

Verdict and judgment were in appellee's favor for $2000.

The appellant's second and tenth assignments of error are grouped and will be considered together. It is contended the special exception addressed to the petition on account of its failure to allege that Gurley has made any effort to rent his land should have been sustained. The petition alleges that by reason of the faulty construction of the railway,

and the overflows that resulted therefrom, that his land was unfit for cultivation, and that it was impossible for him to rent the same for the years mentioned. These allegations were sufficient in order to entitle the plaintiff to recover the damages he sustained. It was not necessary for the plaintiff to aver that he had made an effort to rent the land; for if it was rendered unfit for cultivation and it was impossible for him to rent the same, he was not required to exercise diligence to find renters, as a basis for the damages that resulted from the unlawful conduct of the appellant.

The evidence of the witness Gurley as complained of in the tenth assignment of error was admissible. It was a fact that he could testify to, although not pleaded.

The third assignment of error complains of the action of the trial court in overruling special exceptions to that portion of the plaintiff's petition whereby he seeks to recover $1000 on account of the building of bridges and roads necessary to be erected in passing over his property from one side to the other, on account of the conduct of the appellant in overflowing his lands. It is contended that this item of damages is too remote and is speculative. We see no reason why the plaintiff should not be entitled to recover damages as to this item, if the facts stated in the petition are true. If his land was caused to be overflowed by the faulty construction of appellant's railway in the nature as complained of in the petition, and if in the use of the land it was necessary to erect and construct bridges, etc., and the character and nature of the overflows required this to be done, in order that the plaintiff might use his land in passing from one part to the other, we see no good reason why such expenses so incurred, which became necessary by the wrong and fault of the railway company, could not be recovered.

The fourteenth assignment of error complains of the charge of the trial court in effect instructing the jury that if the railway company constructed its embankment and borrow pits and diverted the waters of Bull Hide Creek, as alleged, and the plaintiff had suffered damages by reason thereof, then to find in favor of the plaintiff. It is contended that this charge is erroneous, because it made the railway company liable, although it may have exercised proper care in constructing its road, and that it could only be held liable in the event that the conduct as complained of was negligence. Article 4436 of the statute provides that in no case shall any railroad company construct a roadbed without first constructing the necessary culverts and sluices as the natural lay of the land requires for the necessary drainage thereof. This is an express requirement of the statute and it must be complied with, and if damages result from a failure to do so, the railway company will be held responsible, although it may have exercised proper care in order to comply with this provision of the law. Texas P. Ry. Co. v. Whitaker, 11 Texas Ct. Rep., 249.

We overrule the sixteenth assignment of error. The charge of the court upon the measure of damages was proper. The eighteenth and nineteenth assignments of error will be considered together. It may be that the point presented in the eighteenth assignment of error was

practically covered by 'the main charge of the court; but the question presented in the nineteenth assignment of error was not submitted, and in passing upon that question we will consider the two charges together, and hold that the failure of the court to give the charge set out under the nineteenth assignment is reversible error. The court's charge on the subject of overflow from the Brazos River is as follows: "And in this connection you are instructed that plaintiff can not recover for any damages sustained by him by reason of any water, whether from the Brazos or Bull Hide, that would have flowed upon his land had said embankment been constructed in a proper manner, if it is not, or not constructed at all, but can only recover, if at all, for the damages created by such water as has been caused to flow upon his land by the improper construction, if any, of defendant's said roadbed or borrow pits."

The charge requested as set out under the nineteenth assignment of error is as follows: "If you find from the evidence that the plaintiff's land was overflowed from the waters of the Brazos River, and that the rental value of plaintiff's land in question resulted in part from the overflows of the Brazos River and in part from the waters of Bull Hide Creek, if you find that the rental value of the plaintiff's land was injured on account of said waters, under all the evidence in this case; if you find the defendant liable at all, the defendant will be liable only for such proportion of the injury, if any, to the rental value of the plaintiff's land, as was caused by the waters of Bull Hide Creek, as complained of in plaintiff's petition."

The plaintiff's petition only complains of the waters from Bull Hide Creek. There is some evidence in the record tending to show that the overflows from the Brazos River during the time complained of may have been in part a cause of the plaintiff's damages; or, in other words, that it was not solely the waters from Bull Hide Creek, but the overflows therefrom in connection with the overflow from the Brazos caused the damages. The charge of the court did not expressly present to the jury the right of the defendant to have considered what effect in part the waters from the Brazos might have had in producing injury to the rental value of the land. If some of the damages could be traced to the overflows from the Brazos the appellant could not be held responsible, as it was not pleaded nor proven that the faulty construction of the railway caused the water from the Brazos to flow over the plaintiff's land. As said before, there is some evidence in the record tending to show that the waters of the Brazos River flowed over the land. It was error in the court to refuse to give this charge.

What we have said practically disposes of the eighteenth assignment of error. While the charge of the court did touch upon that question, it was not as full and specific as the charge requested as set out under the eighteenth assignment of error, and we are of the opinion that the charge should have been given.

The twentieth assignment of error is as follows: "The court erred in refusing to charge the jury as requested by the defendant, to the effect that if the levee built by Norwood caused the change in the chan-

nel of Bull Hide Creek, to find for the defendant, because he had the right to show any fact that occasioned the injury complained of, and because there was evidence tending to show that the Norwood levee tended to change the channel of Bull Hide Creek."

The charge requested is as follows: "If you believe that the levee built by Norwood caused the change in the channel of Bull Hide Creek, you will find for the defendant." In view of the evidence this charge, as framed, was properly refused; but as the question as to Norwood's participation in the act that produced the damage might again arise upon another trial, we offer the following suggestions:

If there should be evidence in the record tending to show that the levee built by Norwood was the sole cause of the overflow of the lands that resulted in damage, and that the railway company did not participate in the wrongful conduct of Norwood, then the charge as framed would be doubtless correct. But if the act of Norwood was in part the cause of the damages, and the conduct of the railway company as complained of in the petition was also in part the cause, and the appellant and Norwood were not acting together in concert (Leidig v. Bucher, 74 Pa. St., 67), then the appellant would be responsible for whatever amount of damages its conduct as complained of occasioned. But if Norwood and the railway company were acting in concert in the construction of Norwood's embankment, or if the railway company consented thereto and participated in the conduct of Norwood in the erection of his embankment, then both or either could be held responsible for the entire damages sustained by the plaintiff that was occasioned by the embankment erected by Norwood (the case cited supra).

We overrule appellant's twenty-first assignment of error. The purchase by the plaintiff of the land to which the damage was sustained subsequent to the time that the embankment was erected, with knowledge of its faulty construction, would not preclude him from recovering damages.

It may be that upon another trial the evidence will be such as to justify submitting the questions raised under the twenty-second and twenty-third assignments of error. The appellant would have the right to show, under the general issue, that the loss of the rental value of the land, which the plaintiff claims was the measure of his damages, was attributable to some extent to the ravages of the boll weevil, or the inability to procure labor to work the land or to rent the same, on account of the exodus of negroes in that vicinity to the Indian Territory. The plaintiff sues for the loss of the rental value of his land for certain years, and claims that his inability to rent it was attributable to the overflows. There is evidence tending to show that he tried to rent the land and could not do so. Of course, the plaintiff's theory is that the overflow from Bull Hide Creek, caused by the conduct of the appellant, was the reason of his inability to rent the land, and if the evidence upon another trial should show that the failure to obtain the full rental value of his lands was attributable solely to the conduct of the appellant, then the other questions raised under these assignments

could not be considered. But if the rental value that he claims that he lost, or, in other words, if the failure to obtain the full rental value of the lands was attributable solely, not to a cause occasioned by the appellant, but was in part caused by the exodus of negroes, whom the evidence shows the appellee relied upon as tenants, or if the depreciated rental value was occasioned in part by the ravages of the boll weevil, the appellant could not be held responsible for such depreciated rental value so occasioned.

We are not prepared to say, in view of the evidence, that the charges requested, as set out under the twenty-fourth and twenty-fifth assignments of error, were proper. The evidence submitted under these assignments tends to show that the waters of Bull Hide Creek would have overflowed the plaintiff's land although the railway had not been constructed, and the charge merely to the effect that if this was the case the railway could not be held responsible, would be improper, in view of some evidence in the record coming from the plaintiff's witnesses. While it is true that the waters of Bull Hide Creek may have flooded the land in ordinary freshets, still that would not have justified the railway company in so constructing its embankment as to collect the water on the plaintiff's land, or to divert the channel of Bull Hide Creek and cause it to flow elsewhere on the plaintiff's land to his damage. Therefore, we are of the opinion that there was no error in refusing these charges. We are inclined to the opinion that if the evidence upon another trial is the same as is now exhibited by the record, that the appellant would be entitled to have the issue of extraordinary and unprecedented floods submitted to the jury upon a proper charge requesting the submission of the issue. The charge as framed and which was refused upon this subject, is not accurate, and for a proper charge we refer to the case of Gulf C. & S. F. Ry. Co. v. Pomeroy, 67 Texas, 498, and Texas & P. Ry. Co. v. Whitaker, 11 Texas Ct. Rep., 249. There was no error in refusing the charge as framed.

In disposing of the twenty-seventh assignment of error, it is only necessary to state that a construction of the court's charge warrants the conclusion that the jury must have understood from its terms that before they could find for the appellee they must believe that the wrongful conduct of the appellant, as alleged, was the proximate cause of plaintiff's damages.

The last assignment of error is on the facts, and is disposed of by the statement that there is evidence in the record upon which to base the verdict.

For the error pointed out, the judgment is reversed and the cause remanded.

*Reversed and remanded.*