**PANHANDLE & S. F. RY. CO. v. WIGGINS et al.**

No. 5412.

Court of Civil Appeals of Texas. Amarillo.

March 23, 1942.

Rehearing Denied April 27, 1942.

Hoover, Hoover & Cussen, of Canadian, Sturgeon & Sturgeon, of Pampa, and Terry, Cavin & Mills, of Galveston, for appellant.

Sanders & Scott, of Amarillo, for appellees.

STOKES, Justice.

This action was instituted on April 8, 1939, by the appellees, R. B. Wiggins and T. D. Wiggins, who, in an amended petition subsequently filed, were joined by Jeannetta Wilson Lyle, John Marquis Lyle, Abbe Grace Love joined by her husband, Ernest C. Love, Samuel Patterson Lyle, Gerard Lyle, Jeannetta Lyle, and Edward Frank Lyle, the widow and children of E. G. Lyle, deceased, against appellant to recover damages to two sections of land formerly owned by E. G. Lyle and conveyed to the Wigginses in 1929. The damage was alleged to have been the result of the construction by appellant of a dyke or jetty some 2100 feet in length upon its right of way and extending 655 feet beyond the right of way onto appellees' land, for the purpose of controlling the waters of Red Deer Creek which runs alongside the right of way of appellant's railroad. The soil of appellees' land was of a sandy nature and they alleged, in substance, that the construction of the dyke diverted the flow of the water in Red Deer Creek from its natural course and, during freshets, floods and rises in the creek, caused it to flow against the bank and over the area opposite the dyke and right of way. They alleged that several hundred acres of their land had been washed away and the entire two sections damaged to the extent and value of $12,500. They alleged that in 1921, appellant began the erection of the dyke, and E. G. Lyle, the owner of the land, protested the same which resulted in negotiations between E.

G. Lyle, accompanied by his counsel, and representatives of appellant, and that these negotiations terminated in an agreement that appellant might continue with the work and erect the dyke as planned, but that if it should thereafter cause injury and damage to the land, appellant would pay the damages and remove the dyke. They further alleged that it was agreed in these negotiations that Mr. Lyle's attorney would write a letter to the general office of appellant at Amarillo, setting forth the agreement reached in the negotiations and that if appellant consented to the conditions agreed upon in the conference, its acquiescence would be manifested by a reply to the letter or by its continuance of the work of erecting the dyke. They alleged that after the conference E. G. Lyle's attorney wrote the letter to the general office of appellant setting forth substantially the agreement reached in the negotiations and that appellant thereafter resumed the construction of the dyke, thus acquiescing in and agreeing to the conditions set forth in the letter, and that this constituted, in effect, a written contract under which appellant would erect the dyke and pay any damages that might result from its establishment. Appellees alleged that a large portion of the land had been washed away and destroyed between May 1, 1935 and April 8, 1937, and that floods, freshets and rises in Red Deer Creek as the result of heavy rains damaged, injured and destroyed a large portion of the land between April 8, 1937 and April 8, 1939, when the suit was filed.

Appellant answered by the general issue, a large number of special exceptions and various pleas of limitation, the nature of which will be revealed in our discussion of the case.

The case was tried before a jury and submitted upon special issues, in answer to which the jury found: (1) That in the negotiations above mentioned it was agreed that the attorney of E. G. Lyle would write the letter, as we have indicated; that such letter was written and mailed by him to appellant's general office; that appellant received the letter, and afterwards proceeded with the construction of the dyke; (2) that the dyke erected on appellees' land diverted the natural flow of the waters of Red Deer Creek and resulted in injury to appellees' land; (3) that the difference between the market value of the land on May 1, 1935, and its market value

on April 8, 1937, caused by the maintenance of the dyke, exclusive of all other causes, was $1,500; and (4) that the difference in the market value of the land on April 8, 1937, and its market value on April 8, 1939, caused by the maintenance of the dyke on appellees' land, exclusive of all other causes, was $1,250.

Based upon the verdict, the court entered judgment in favor of appellees for the sum of $1,500 with interest thereon at the rate of six per cent per annum from April 8, 1937, and for the further sum of $1,250 with interest thereon at the rate of six per cent per annum from April 8, 1939.

Appellant presents and urges a large number of assignments of error and propositions of law which we think may be reduced to four controlling issues. It contends, first, that the court erred in submitting special issues and permitting recovery by the appellees Lyles; secondly, that error was committed in submitting special issues and permitting recovery by any of the appellees upon the alleged contract which resulted from the negotiations concerning the erection of the dyke; thirdly, it contends that the court erred in refusing to submit specially requested charges to the jury upon the question of injury and damage to the land caused by erosion on the west side of the creek and water entering Red Deer Creek from the ravines and hills located on the west side and opposite the dyke and right of way; and, fourthly, it assigns error of the court in refusing special issues requested by it upon the question of whether or not the dyke had been of benefit to some of the land.

The first contention, as arranged by us, raises the question of whether or not the Lyles were entitled to recover and were necessary or proper parties to the suit. The record shows that the land belonged to E. G. Lyle until sometime in 1929, when it was sold and conveyed by him to appellees, R. B. Wiggins and T. D. Wiggins. As part of the consideration the Wiginses executed a series of vendor's lien notes, the amount and balance due thereon not being shown by the record although it is shown that the entire series had not been discharged at the time of the trial. The Lyles plaintiffs did not allege nor prove any injury or damage other than that which was alleged as having accrued to the other plaintiffs. The petition

and the evidence go no further in respect to their rights or damages than to allege and prove the sale on February 1, 1929, by their deceased father, E. G. Lyle, to the Wigginses, the execution by the purchasers of a series of notes as part of the purchase price and the reservation of a vendor's lien to secure the same. The judgment was in favor of all of the appellees, no specific sum being decreed to any of them. Under the pleadings and the evidence, the Lyles were nothing more than mortgagees out of possession. If they were entitled to recover in this action it was only by virtue of injury to their security and they did not allege nor prove any such injury. Even though they held the superior title as between them and the other appellees, they stood only in the relation of mortgagees of the land and were not entitled to possession until default in the payment of some of the indebtedness and a rescission by them of the contract. Appellant urged exceptions to the petition in so far as it attempted to plead a cause of action in favor of the Lyles, which exceptions were overruled by the court. In this we think the court committed error, although, of itself, it is probably not of sufficient importance to furnish a basis for reversing the judgment. The Lyles had the right to allege any damages to which they were legally entitled which, as we have said, could only have been such damages as arose to their security by the acts of appellant. This they failed to do, and, not having done so, they had no right further to participate in the trial. Smith et al. v. Frio County, Tex.Civ.App., 50 S.W. 958; Carey et al. v. Starr et ux., 93 Tex. 508, 56 S.W. 324; Shell Pipeline Corporation v. Guthrie et ux., Tex.Civ.App., 21 S. W.2d 710.

Appellant's next contention raises the principal question presented by the appeal. As we have stated, appellees set up the alleged contract entered into between E. G. Lyle and agents and representatives of appellant in 1921, which provided, in effect, that appellant should have permission to build the dyke, but that it would pay any damages that might accrue to the land and remove the dyke if it caused injury and damage to the land. Under this contract appellees sought and recovered damages which they alleged accrued between May 1, 1935 and April 8, 1937, upon the theory that it constituted a covenant running with the land. The suit was not filed until April 8, 1939, and appellees were therefore permitted to recover for damages and injury to the land which occurred more than two years prior to the institution of the cause of action. Appellant excepted to the petition in so far as it attempted to allege a cause of action based upon the contract under which appellant was permitted to establish the dyke, and its exceptions were overruled. Moreover, the court submitted special issues to the jury concerning damages that were alleged to have accrued to the land by overflow of the creek between May 1, 1935 and April 8, 1937, and the jury found that the land had been damaged during that period to the extent of $1,500. This item constituted a portion of the judgment in favor of appellees. Appellant excepted to the special issues submitted to the jury and objected to the judgment entered against it for any alleged damages which accrued more than two years prior to the filing of the suit on April 8, 1939. Appellees contend that no error was committed by the court in overruling these exceptions because the alleged contract created by the writing of the letter by E. G. Lyle's attorney to the general office of appellant at Amarillo, in which he set forth the conditions agreed upon in the preceding conference under which appellant might erect and maintain the dyke, and appellant's acceptance of those conditions by proceeding with the erection and maintenance thereof, constituted a covenant running with the land and that therefore the Wigginses were entitled to recover under it. If the contract was a covenant running with the land, the Wigginses had the right to recover upon it, and the jury having found the contract was in writing, they would be entitled to recover all damages that accrued during the four years preceding the filing of the suit.

 We do not agree with appellees in these contentions, however. Covenants are divisible into two classes, known as real covenants and personal covenants. A real covenant is one having for its object something annexed to, inherent in, or connected with, land or real property—one which relates to, touches or concerns the land granted or demised and the occupation or enjoyment thereof. A covenant is said to run with the land when a liability to perform duties or the right to receive advantages thereof passes to a vendee or other assignee of the land. American Re-

fining Co. et al. v. Tidal Western Oil Corporation, Tex.Civ.App., 264 S.W. 335; Hurxthall v. St. Lawrence Boom & Lumber Co., 53 W.Va. 87, 44 S.E. 520, 97 Am. St. Rep. 954; Gilmer v. Mobile & Montgomery Ry. Co., 79 Ala. 569, 58 Am.Rep. 623. It is also well settled that in order to be a covenant running with land there must be privity of estate between the parties to it. This means there must be a mutual or successive relationship to the same rights of property. Swiss Oil Corporation v. Dials et al., 232 Ky. 298, 22 S.W.2d 912; Mygatt et al. v. Coe, 124 N.Y. 212, 26 N.E. 611, 11 L.R.A. 646; Fresno Canal & Irrigation Co. v. Rowell, 80 Cal. 114, 22 P. 53, 13 Am.St.Rep. 112. Other necessary elements of a real covenant, or one that runs with land, are that it must be contained in a grant of the land or of some interest or estate therein and, where the assigns of the grantee are not specified, it must be a thing in esse. Bull v. Beiseker et al., 16 N.D. 290, 113 N.W. 870, 14 L. R.A.,N.S., 514; Wallace v. Pereles, 109 Wis. 316, 85 N.W. 371, 53 L.R.A. 644, 83 Am.St.Rep. 898; Gulf, C. & S. F. Ry. Co. v. Smith et al., 72 Tex. 122, 9 S.W. 865, 866, 2 L.R.A. 281. In the case last cited, Judge Hobby, speaking for the Supreme Court of this State, said: "If the covenant be to erect or set up a new house and the like, it will not bind the assignees unless they be named in the covenant."

■■ As we have already said, the alleged contract under which appellees contend the dyke was erected consisted of a letter written by the attorney for E. G. Lyle in 1921 to the general officers of appellant at Amarillo. There is no contention that any portion of the land involved, not even that portion occupied by the dyke, was conveyed by the contract or otherwise, and there was, therefore, no privity of estate between the parties. The contract did not even contain a written acceptance of appellant. Its acceptance was predicated upon the fact that appellant continued with the work of erecting the dyke after the letter was written. Appellees contend that the portion of the letter which constituted a covenant running with the land consisted of the provisions therein to the effect that appellant would pay, generally, any damages that might result from the erection and maintenance of the dyke. Of course, if the letter had specifically limited such payment to E. G. Lyle, it could not have constituted a real cove-

nant, but appellees contend that the obligation to pay the damages was not confined to E. G. Lyle, the then owner, but was, in effect, a general and continuing promise to pay such damages to anyone who might thereafter become the owner, as well as to E. G. Lyle who owned the land at that time. Other than this rather strained construction of the language used, there was no mention of the assignees of E. G. Lyle, and we are unable to agree with appellees that the letter had any reference whatever to those who might afterwards purchase the land from E. G. Lyle. The contract not amounting to a conveyance of the land, it could not constitute a real covenant, and for that reason alone it falls short of being such. Moreover, it did not refer to, nor concern, a thing then in being and the assigns of E. G. Lyle were not specified nor named therein. For that reason, also, it can not be said to be a real covenant. If appellees were entitled to recover at all for the damages that accrued between May 1, 1935 and April 8, 1937, it must have been by virtue of the terms of the contract and the contract must have amounted to a covenant that ran with the land. What we have said indicates that in our opinion it did not amount to a covenant running with the land, and the Wigginses appellees were not entitled to recover under it. The court erred, therefore, in overruling appellant's exceptions and rendering judgment in favor of appellees for the $1,500 which, according to the verdict of the jury, represented damages that accrued to the land more than two years prior to the institution of the suit. Their recovery, if any, is limited to that to which they may be entitled under the statute, Article 7589a, Vernon's Ann.Civ.St., or one arising at common law, and is limited under our law to the period of two years immediately preceding the institution of the cause of action. Article 5526, R.C.S. 1925.

The next contention of appellant refers to the action of the court in refusing to submit to the jury a special charge requested by it to the effect that if they believed from the evidence that appellees' lands were damaged by reason of drainage of water over and from the land lying west of Red Deer Creek, irrespective of the presence of the dyke, and that the evidence was not sufficient to enable them to determine what portion of the damage was caused by the dyke, they should not undertake to assess any damage based upon mere surmise or speculation in response to any

special issue submitted. In this connection it also complains of the refusal of the court to sustain its special exception to Special Issue 5b upon the ground that there was no evidence from which the jury could separate the damage caused by the flow of water into the creek from the west side from that caused by the presence of the dyke.

■ Appellant having pleaded a general denial to the allegations of appellees that the damage to their lands had been caused by the dyke erected and maintained by appellant, it was entitled to show that the damage, if any, to appellees' land was attributable in part to causes independent of any influence the dyke may have had upon the flow of the water in the creek. San Antonio & A. P. R. Co. v. Gurley, 37 Tex. Civ.App. 283, 83 S.W. 842; Wichita Valley R. Co. v. Marshall, Tex.Civ.App., 37 S. W.2d 756. The testimony of some of the witnesses, together with a number of pictures, maps and drawings, reveal that the land lying west of the creek consisted of hills and valleys and that considerable water from heavy rains flowed into the creek from the drainage on that side, which was the opposite side of the creek from appellant's right of way and dyke, and that some of the injury and damage to the land was the result of this drainage. It is also shown that where drains and brooks entered the creek considerable erosion appeared from time to time, and the evidence is amply sufficient to show that a portion of the injury and damage to appellees' land was caused by water falling on the west side of the creek and entering it from that direction. There was no evidence, however, which showed the proportion of the damage thus caused. Appellees' petition complained only of the water that was diverted in its course by the construction and maintenance of the dyke. Obviously, if some of the injury was caused by drainage from and over the lands lying west of Red Deer Creek, appellant would not be responsible for any damage that may have resulted therefrom. The court recognized this in framing Special Issue 5b as follows: "What do you find from a preponderance of the evidence was the difference, if any, between the market value of plaintiffs' land as of April 8, 1937, and the market value of plaintiffs' land as of April 8, 1939, caused by the maintenance of the dyke on plaintiffs' land (and exclusive of all other causes, if any) during such period, if any difference was so caused? Answer in dollars and cents." In answer to this special issue, the jury found the land had been damaged in the respects and during the time mentioned in the sum of $1,250.

■ It is well settled that where it appears that only a part of the damage suffered by the plaintiff was the result of the acts charged against the defendant, and a part thereof was caused by some other agency or person, a judgment against the defendant cannot be sustained unless the evidence is sufficient to show what part of the damage is attributable to the acts of the defendant. City of Austin v. Howard, Tex.Civ.App., 158 S.W.2d 556; Texas & P. R. Co. v. Dunn, Tex.Sup., 17 S.W. 822; D. H. Fleming & Son v. Pullen, Tex.Civ. App., 97 S.W. 109; Currie v. Trammell, Tex.Civ.App., 289 S.W. 736; City of Pampa v. Long, Tex.Civ.App., 110 S.W.2d 1001; Houston Chronicle Pub. Co. v. Martin, Tex.Civ.App., 64 S.W.2d 816, 819.

In Houston Chronicle Publishing Co. v. Martin, supra, Justice Jackson of this court announced the correct rule to be observed in such circumstances by a quotation from 8 R.C.L. 435 and 436, as follows: " 'Since it is a rule that the defendant is liable only to the extent to which his acts have caused the injury complained of, it follows that consecutive wrongs done by independent agents cannot be joined together to increase the responsibility of one of the wrongdoers. This rule applies notwithstanding any difficulty there may be in determining what part of the injury or loss was the result of the acts or omissions of the defendant, and what the result of other causes.' "

There being ample evidence in the record to show that the injury and damage to the land resulted from erosion and that the erosion resulted from various causes, for some of which appellant cannot be held responsible, and there being a complete absence of any evidence showing the portion of the damage which resulted from the various causes, the proof was lacking in sufficient certainty to enable the jury to apportion any particular part of the damages to the acts for which appellant might be liable. Under such circumstances the jury should not be required arbitrarily to make the apportionment for the simple reason that it is too uncertain and speculative and does not come within the realm of those

things which the members of the jury are enabled to determine from common experience.

■ The judgment in favor of appellees for the sum of $1,250, representing damages to the land that accrued subsequent to April 8, 1937, being based upon the verdict of the jury which lacks support in the evidence, the assignments of error urged by appellant in respect to this matter will have to be sustained.

■ Appellant's next contention is presented by its twenty-second proposition and complains of the refusal of the court to submit a special issue requested by it requiring the jury to find whether or not the erection of the 655 feet of dyke on appellees' land protected a portion of the land from the flood waters of Red Deer Creek and was therefore a benefit to appellees. Appellant was entitled to show any facts in connection with the injury complained of which tended to reduce or mitigate the damages and the amount of compensation to which appellees might be entitled. There was testimony to the effect that the waters in the creek would have caused more erosion on the east side along the railroad and along the banks of the stream on the west side, and that the cuts north of the dyke would have been sharper and eroded more of the land, if it had not been for the protection afforded by the dyke. We fail to find in the testimony any evidence of the value of the portion of the land which appellant claims was benefited or any estimate of the value of such benefits. The rule which appellant here seeks to invoke applies only where the value of the benefits is shown. We are unable to sustain appellant in this contention because of its failure to establish a basis in value for the special issue requested by it, and these assignments of error will be overruled. Gulf, C. & S. F. R. Co. v. Harbison, 99 Tex. 536, 90 S.W. 1097.

For the errors indicated in the foregoing discussion, the judgment of the court below will be reversed, and the cause remanded.

### On Motion for Rehearing.

■ Both the motion for rehearing filed by appellees and the reply thereto by appellant indicate that our holding in regard to the special charge requested by appellant has been construed as meaning that the special charge as presented should have been given. The instruction requested by appellant was in the nature of a general charge. The case was submitted upon special issues, and it is well established in this State that where a case is submitted upon special issues no instruction in the nature of a general charge should be submitted to the jury. El Paso Electric Co. v. Collins, Tex.Com.App., 23 S.W.2d 295.

■ If the special charge had been submitted to the jury it would have instructed them, in effect, that although they should find from the evidence that appellees' land had been injured from flood waters entering the creek from the west or by the waters of Red Deer Creek irrespective of the dyke and although they should believe from the evidence that the presence of the dyke diverted certain flood waters in the creek in a sufficient amount to cause additional damage to the land, still, if they should find that the evidence did not enable them to determine therefrom what portion of the damage was caused by the presence of the dyke they would not undertake to assess any damage based upon mere surmise or speculation in response to any special issue submitted to them. In addition to being in the nature of a general charge, the instruction placed the burden upon the jury of determining whether or not there was any evidence that would support an affirmative answer to the special issue upon the amount of damages. It is also well settled in this State that the question of whether or not there is any evidence to support a special issue is one of law to be determined by the court and, in the absence of any evidence to support a finding, the special issue should not be submitted at all. Tracey v. Wichita Ice Co., Tex.Civ.App., 30 S.W.2d 673.

■ The rule is that simultaneous or consecutive wrongs done by independent agencies that are not joint tort-feasors can not be joined together to increase damages for which a wrongdoer is responsible, and the rule applies regardless of any difficulty that may be encountered in determining the consequences of the respective injuries. While it would be immaterial in this case to ascertain in dollars and cents the amount of damage, if any, caused by the flood waters entering Red Deer Creek from the west, it is necessary that the testimony separate that damage from the damage, if any, caused by the maintenance of the dyke on the opposite side of the creek. Since the case was submitted upon special

issues and probably will be so submitted upon another trial, the jury should be required to ascertain the extent of the respective injuries in order that they might determine the amount of damage that was caused by the maintenance of the dyke, and then only if the evidence is sufficient to constitute the basis for such finding.

We find nothing in the motion for rehearing that changes our views as expressed in the original opinion, and the motion will be overruled.