**MOBIL OIL CORPORATION, formerly Socony Mobil Oil Company, Inc., Appellant,**

v .

**Leonard J. BRENNAN et ux., Appellees.**

No. 24260.

United States Court of Appeals
Fifth Circuit.

Nov. 9, 1967.

Rehearing Denied Dec. 4, 1967.

Allen Wood, Roy L. Merrill, Corpus Christi, Tex., Donald G. Canuteson, Dallas, Tex., Fischer, Wood, Burney & Nesbitt, Corpus Christi, Tex., for appellant.

No appearance or brief for appellees filed in this case.

Before WISDOM, THORNBERRY and GOLDBERG, Circuit Judges.

THORNBERRY, Circuit Judge:

Appellee, owner of the surface estate of a 3,009-acre ranch in Duval County, Texas, brought this diversity suit against the Mobil Oil Corporation, present owner of ⅞ of the mineral estate. By this suit, Mr. Brennan sought to compel Mobil to bury pipelines running over the surface of the land, to remove abandoned concrete foundations, and to pay damages for failure to bury pipelines and remove concrete foundations upon prior request. In overruling appellant's motion for summary judgment, the district court held that appellee, as successor in title to the surface estate, could enforce the provisions of a mineral deed executed in 1926 by his predecessor A. Weil to appellant's predecessor, the Magnolia Petroleum Company. At the conclusion of an extensive trial on the merits, the district court, sitting without a jury, held that the terms of the 1926 deed required appellant to bury its pipelines to a depth of at least twelve (12) inches below the surface of the land and to remove all abandoned concrete foundations. The judgment entered on August 15, 1966 ordered the company to satisfy these requirements "as rapidly as is reasonably possible" and further ordered it to pay damages in the amount of $5,660.83, plus interest. We affirm.

## I.

By the 1926 mineral deed, A. Weil and his wife conveyed to Magnolia an undivided ⅞ interest in the oil, gas, and other minerals in the tract involved herein, together with the necessary surface rights. The Weils reserved a ⅛ interest in the oil, gas, and other minerals produced from the land and limited the surface rights given to Magnolia by language providing in pertinent part that 'on Grantors' request all pipe lines laid across any of said land to be tilled shall be placed below plow depth" and that, although Magnolia was granted such use of the surface as might be necessary, it "shall in no manner interfere with the use of lands for grazing purposes, except herein granted and stipulated." By warranty deed dated December 28, 1959, Mr. Brennan acquired the surface estate from successors in title to the Weils. This deed reserved all minerals and surface rights for minerals and made the conveyance subject to the rights of Magnolia under the 1926 deed. A clause in the 1959 deed lists the particular surface rights reserved for the owner of the mineral estate, but the instrument does not contain the language employed by the Weils in 1926 to limit these rights. Finally, in 1965 Mobil acquired from the Weils' trustee a conveyance purporting to grant the surface rights reserved by the 1959 deed. Thus, Mobil succeeded to the title originally held by Magnolia, and appellee succeeded to the title originally held by A. Weil. The primary question is whether appellee can enforce against Mobil the limitations on the mineral owner's surface rights made express by the 1926 deed but not by the 1959 deed.

Appellant's argument on its unsuccessful motion for summary judgment and before this Court is that the right to require the burial of pipelines and the right to prevent interference with grazing never passed to appellee, that these rights were not expressed in the 1959 deed to appellee and therefore remained with his grantor. By its line of reasoning, the right to enforce these limitations on the mineral owner and the concomitant right not to enforce them passed from appellee's grantor to Mobil under the 1965

conveyance.[1] While this argument that the company acquired the right not to comply with the limitations in 1965 has the merit of ingenuity, the heart of its position is that appellee cannot enforce them because they were not contained in the 1959 deed by which he acquired the surface estate. The district court disagreed, taking the view that the limitations contained in the 1926 deed were covenants running with the land with the consequence that appellee acquired the right to enforce them as successor in title to the surface estate.

At an early date, Texas courts began to state the fundamental proposition that a covenant running with the land is one which touches or concerns the land and that such a covenant "accompanies a conveyance of the land, and passes from one purchaser to another, through each successive link in the chain of title." Flanniken v. Neal, 1887, 67 Tex. 629, 4 S.W. 212; see Panhandle & S. F. Ry. Co. v. Wiggins, 161 S.W.2d 501 (Tex.Civ. App.—Amarillo 1942, writ ref'd. w o.m.); Beckham v. Ward County Irr. Dist., 278 S.W. 316 (Tex.Civ.App.—El Paso 1925, writ ref'd). The generalization that a covenant running with the land is one which touches or concerns the land was carefully explained by the late Judge Charles E. Clark:

> If the promisor's legal relations in respect to the land in question are lessened—his legal interest as owner rendered less valuable by the promise —the burden of the covenant touches or concerns that land; if the promisee's legal relations in respect to that land are increased—his legal interest as owner rendered more valuable by the promise—the benefit of the covenant touches or concerns that land. It is necessary that this effect should be had upon the legal relations of the parties as owners of the land in ques-

tion, and not merely as members of the community in general, such as taxpayers, or owners of other land, in order that the covenant may run. Thus, an agreement by the lessee to leave part of the leased land unploughed each year restricts the lessee's privilege of user, while it gives a right benefiting the lessor in his reversion in the land by securing a crop rotation; hence both right and duty should run.

Clark, Real Covenants and Other Interests Which "Run With Land" 97 (2d ed. 1947). In the instant case, it is apparent that the original covenants by Magnolia to place pipelines below plow depth upon request and to refrain from interference with grazing made its interest in the land somewhat less valuable by restricting its use of the surface and at the same time made the Weils' interest in the surface more valuable for ranching purposes. Hence both "right and duty should run" to the successive owners of the surface and mineral estates.

There may be cases for which the above analysis will not provide a satisfactory answer without considerable refinement, but the covenants involved in the instant case seem so clearly to relate to the land that we need not belabor the point. Further, there is no doubt that the requirement of privity of estates is satisfied, Panhandle & S. F. Ry. Co. v. Wiggins, 161 S.W.2d 501 (Tex.Civ.App. —Amarillo 1942, writ ref'd w. o. m.), since the parties to this litigation have succeeded to substantially the same legal interests in the land as were held by the original parties to the covenants. Though its language may have been too broad, we must agree with the district court's conclusion that the limitations on the mineral owner's surface rights "attached to the surface estate, and will remain with the same forever unless expressly detached therefrom by the sur-

---

1. With respect to the 1965 conveyance, the district court correctly observed that The 1965 grant of surface rights to Defendant conveyed to it nothing it had not already acquired through its predecessor in the 1926 mineral deed, which was a surface easement of the mineral estate limited by the language therein. By accepting this deed, Defendant's predecessor became a party to it and was bound by its terms.
(R. 134)

face owner" (R. 133). It is not necessarily true that covenants continue to run with the land until expressly abrogated, but in this case appellant does not argue that the covenants have ceased to run because they have always been disregarded or because conditions have so changed over the years as to make their enforcement unreasonable. See Morton v. Sayles, 304 S.W.2d 759 (Tex.Civ.App.—Eastland 1957, writ ref'd n. r. e.).

## II.

■ Having concluded that appellee has the right, as successor in title to the surface estate, to enforce limitations provided by the 1926 deed, we must now consider appellant's remaining contentions. The 1926 deed said that on the grantor's request pipelines "laid across any of said land *to be tilled* shall be placed below plow depth" (Emphasis added). The trial court found that the land has been used for raising cattle and that, in order for appellee to make maximum use of the land for grazing, it would be necessary to root plow the ground, rake and burn the roots, and then plant Buffelgrass. Appellant asserts that since root plowing was unknown in 1926, this program of plowing, brush removal, and grass planting could not have been the kind of "tilling" contemplated by the parties to the deed. The trial court held, and we agree, that "tilling does not necessarily mean farming as such" (R. 506) and that any disturbing of the soil in order to get plant seeds to grow constitutes tilling.

As the court observed, "modern cattle raising necessitates the planting of grasses other than native grasses in order to increase the capacity of the range to sustain animal units" (R. 505). Two expert witnesses—one a conservationist with the Soil Conservation Service of the Department of Agriculture and the other a farm manager for Texas A & I College—gave testimony to the effect that a grass-planting program designed to facilitate cattle raising was essentially the same as the planting of oats or corn or anything else. In fact, Mr.

Brodnay from Texas A & I, who was presented as a witness for appellant, gave an affirmative answer when asked by the court whether the type of thing proposed by Mr. Brennan should be considered tilling of the soil:

Q Well, you know what they do here. The grazing programs they have, or these grazing practices, they root plow it, then they rake it. When they rake it, they break up a little crust, and then they bed it with seed.

A Yes, sir.

Q Would you consider that operation a tilling of the soil for that purpose?

A Yes, sir.

(R. 389). Since the parties to the 1926 deed obviously contemplated that the land would be used for cattle grazing and since the agricultural experts indicated that the root-plowing and grass-planting process can reasonably be considered tilling of the soil, the district court's finding that appellee proposes to till the soil within the meaning of the deed and that Mobil must therefore bury its pipelines upon request is affirmed.

Appellant argued that root plowing necessitates a greater plow depth than was contemplated by the parties in 1926. The court agreed, holding that the plow depth contemplated was twelve inches below the surface and that Mobil could only be required to pay the cost of burying its pipelines to that depth. While appellant further complains that the court erred in giving Mr. Brennan authority to negotiate with Mobil's contractor for deeper plowing at his own expense, we find that this was a reasonable way of assuring the effective implementation of a program that appellee had a right to implement.

■■ As to the requirement that it remove abandoned concrete foundations or pay appropriate damages, Mobil insists that it had a right to build the foundations in order to explore for, develop, and produce minerals and that under Texas law the party in charge of drilling

operations has no implied duty to restore the surface to the condition it was in prior to the commencement of the work. While these statements are correct, the real question is whether covenants in the 1926 deed expressly require appellant to remove objects no longer needed for drilling operations. Express language may limit the surface easement of the mineral estate and impose upon the mineral owner a duty of restoration not otherwise present. Warren Petroleum Corp. v. Monzingo, 1957, 157 Tex. 479, 304 S.W.2d 362, 65 A.L.R.2d 1352; Meyer v. Cox, 252 S.W.2d 207 (Tex.Civ.App.—San Antonio 1952, writ ref'd). With this rule in mind, we have no difficulty affirming the district court's finding that "there is no question that even though the area they [the concrete foundations] cover is small, they are interfering with the use of the land for grazing purposes, which is strictly prohibited under the terms of the mineral deed of 1926" (R. 509).

■ Finally, appellant alleges error in the award of damages for failure to bury pipelines and remove concrete foundations upon prior request. Appellee claimed that his conservation plan would make his cattle business more profitable and that the delay in implementing the plan caused by Mobil prevented him from realizing greater profits. More specifically, he presented the testimony of a rancher in the area (R. 277–299) and other evidence which tended to show that by improving 2,200 acres of his 3,009-acre ranch, appellee could reasonably expect a larger calf crop each year and also fleshier calves. Fleshier calves would in turn produce more income since they are sold by weight. On the basis of the number of calves he could have expected to sell over the four-year period from 1963 to the time of trial and the prices at which he could have expected to sell them, Mr. Brennan calculated his actual damages at a minimum of $54,000. The district court found that in 1962 Mobil was requested to bury pipelines and remove concrete foundations pursuant to the terms of the 1926 deed, that its failure to do so constituted a breach of a contractual duty created by the deed, and that this breach in turn precluded financial gains by appellee. On the other hand, the court was unwilling to accept appellee's figures because many parts of the ranch could have been root plowed, raked, and planted in spite of the unburied pipelines. As stated previously, actual damages were set at $5,660.83, plus interest for the four-year period. While the calculation of lost profits necessarily involved some speculation, we cannot say that the trial judge, who had an opportunity to evaluate the credibility of witnesses, was clearly erroneous in his determination of the fact and amount of damages. Fed.R.Civ.P. 52(a).

Having concluded that appellee is entitled to enforce limitations on Mobil's surface rights and having further concluded that these limitations require the company to bury its pipelines, remove abandoned concrete foundations, and pay damages for failure to comply with a prior request, we accordingly

Affirm.

## ON APPELLANT'S MOTION TO VACATE OR MODIFY JUDGMENT AND, IN THE ALTERNATIVE, FOR A REHEARING

### PER CURIAM:

It is ordered that appellant's motion to vacate or modify judgment and, in the alternative, for a rehearing, filed in the above styled and numbered cause be, and the same is, hereby denied.